775 F.2d 998
 39 Fair Empl.Prac.Cas. 350,
41 Fair Empl.Prac.Cas. 931,
38 Empl. Prac. Dec. P 35,647
Kathryn LOWE, Plaintiff-Appellant,
v.
CITY OF MONROVIA, Paul Stuart, Robert Bartlett, Monrovia
City Council, John Nobrega, Mary Wilcox, Ed
Zoolalian, Robert Ovrom and Betty
Logans, Defendants- Appellees.
 No. 84-5960.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1985.
Decided Oct. 30, 1985.
As Amended Dec. 26, 1985 and Jan. 21, 1986.
 
 Charles B. Johnson, Pasadena, Cal., for plaintiff-appellant.
 Melanie Poturica, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON and REINHARDT, Circuit Judges, and SCHWARZER,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 Kathryn Lowe, a Black woman, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (1982), alleging that the failure by the City of Monrovia ("the City") and the individual defendants to hire her for a position on the City's police force resulted from discrimination on the basis of race and sex. Lowe also sought relief under 42 U.S.C. Sec. 1981 (1982) and 42 U.S.C. Sec. 1983 (1982) for the City's alleged discriminatory employment acts. The district court granted the City's motion for summary judgment, ruling that Lowe could not establish a prima facie case of discrimination because she was not rejected during the effective dates of the employment eligibility list on which her name was placed. We reverse.
 
 I. BACKGROUND
 
 2
 The City of Monrovia hires both inexperienced recruits and experienced officers ("lateral hires") to fill entry-level police officer vacancies. The City accepts applications for entry-level police officers at all times, even when no openings exist. After receiving applications from recruits, the City requires these candidates to pass both a written and an oral examination. Applicants who pass both tests are placed on an eligibility list. They are ranked on the list according to their scores. The eligibility list, however, does not become effective until a designated later date. Once a list does become effective, it remains in effect for six months. According to the City, when openings occur, positions are offered to the applicants on the then active "Entry Level Police Officer" list in the order of their rank on that list. The City also maintains a list of lateral entry candidates, although it is not clear how that list is compiled. Nor is it clear when the City hires laterally for an available entry-level position instead of offering the position to an eligible recruit applicant. It does appear, however, that most entry-level positions are filled by recruits rather than experienced officers.
 
 
 3
 Kathryn Lowe, an inexperienced graduate of a police officer training program, applied for an entry-level police officer position on the Monrovia police force in January 1982. At that time there were no women or Blacks on the police force.
 
 
 4
 There is no dispute that an opening actually existed for an entry-level police officer when Lowe applied. The City contends, however, that although an opening existed and although she was qualified, Lowe never became eligible to fill that opening. Lowe passed both the written and the oral examinations by May 28, 1982 and was notified on June 3, 1982 that she had been accepted for the eligibility list. Nevertheless, according to the City, the list that contained her name did not become effective until August 1, 1982 and the opening that existed when Lowe first applied was filled prior to that date. According to the City, Lowe was not eligible for employment after February 1, 1983 because the list on which her name appeared automatically expired on that date. It is undisputed that there was no opening for an entry-level police officer at any time between August 1, 1982 and February 1, 1983.
 
 
 5
 Lowe claims that during her oral examination, Betty Logans, Personnel Division Manager for Monrovia, told her that the City's police force had no women and no Blacks and it "[had] no facilities." Logans suggested that Lowe apply for a position in Los Angeles where the police department is "literally begging for minorities and especially females."[1] Citing that statement, Lowe filed a complaint against the City with the EEOC on June 18, 1982. On June 7, 1982, prior to the effective date of Lowe's eligibility list but after Lowe had been notified that she had qualified for placement on the list, Louis Razo was hired laterally for an entry-level police officer position. Lowe amended her EEOC complaint on June 24, 1982 to include that information.
 
 
 6
 After receiving a right-to-sue letter from the EEOC, Lowe brought this suit. Her complaint alleged three independent causes of action. The first cause of action, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (1982), alleged discrimination for failure to hire Lowe as a police officer based on her race and her sex.[2] The second cause of action, brought under 42 U.S.C. Sec. 1981 (1982), alleged that Lowe's right to contract for her personal services as a police officer on a basis equal to other persons was denied to her because of her race and sex. The third cause of action, brought under 42 U.S.C. Sec. 1983 (1982), alleged that Lowe was denied employment based on her race and sex in violation of the equal protection clause of the fourteenth amendment.
 
 II. STANDARD OF REVIEW
 
 7
 The district court found that Lowe was barred from bringing an action for sex discrimination pursuant to Title VII because she failed to file a complaint for sex discrimination with the EEOC. When a plaintiff fails to raise a Title VII claim before the EEOC, the district court lacks subject matter jurisdiction to hear it. Shah v. Mt. Zion Hospital and Medical Center, 642 F.2d 268, 271-72 (9th Cir.1981). Except where the jurisdictional issue requires a determination of facts relevant to the merits of the dispute, a district court "is ordinarily free to hear evidence regarding jurisdiction, and to rule on that issue prior to trial, resolving factual disputes where necessary." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983). When a case is dismissed for lack of subject matter jurisdiction, we apply the clearly erroneous standard in reviewing the district court's underlying factual findings. Under that standard, we accept the district court's findings of fact unless upon review we are left with the definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541-42, 92 L.Ed. 746 (1948); Bohemia, Inc. v. Home Insurance Co., 725 F.2d 506, 509 (9th Cir.1984).
 
 
 8
 The district court disposed of the remainder of Lowe's claims, including the Title VII race discrimination claim, by granting the defendants' motion for summary judgment. We review a grant of summary judgment de novo, Lojek v. Thomas, 716 F.2d 675, 677 (9th Cir.1983), and like the trial court, we are governed by the standard set forth in Federal Rule of Civil Procedure 56(c), Twentieth Century-Fox Film Corp. v. MCA, 715 F.2d 1327, 1328 (9th Cir.1983). We must determine whether, viewing the facts and the law in the light most favorable to the nonmoving party, there is any genuine issue of material fact and whether the substantive law was correctly applied. Amaro v. Continental Can Co., 724 F.2d 747, 749 (9th Cir.1984); Lojek, 716 F.2d at 677; Fed.R.Civ.P. 56(c).
 
 III. THE TITLE VII CLAIMS
 A. Sex Discrimination
 
 9
 When determining that Lowe's Title VII sex discrimination claim was jurisdictionally barred, the district court considered Lowe's amended EEOC complaint. In contrast to the initial complaint she filed with that agency, Lowe's amended EEOC complaint explicitly states: "I feel the sole reason for my denial of the job is because I am Black." The amended complaint does not allege discrimination on the basis of sex. Because the district court correctly found that Lowe did not file a sex discrimination claim with the EEOC, we affirm its dismissal of the Title VII sex discrimination charge.
 
 B. Disparate Impact on the Basis of Race
 
 10
 Lowe alleges that the City's policy of using eligibility lists that have delayed effective dates and that expire automatically, along with its reliance on lateral-hire employees to fill entry-level positions, has a disparate impact on Blacks. In order to prevail in a Title VII case on a disparate impact theory, a plaintiff must show that a business practice, neutral on its face, has a substantial adverse impact on a group protected by Title VII. Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). Once the plaintiff establishes a prima facie case of disparate impact, the burden shifts to the defendant to show that the practice is justified by "business necessity." Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 537 (9th Cir.1982); Contreras v. City of Los Angeles, 656 F.2d 1267, 1275-80 (9th Cir.1981). The district court concluded that Lowe failed to establish a prima facie case of disparate impact. We agree.
 
 
 11
 A "disparate impact" plaintiff, unlike a plaintiff proceeding on a "disparate treatment" theory, may prevail without proving intentional discrimination. American Federation of State, County, and Municipal Employees (AFSCME) v. Washington, 770 F.2d 1401, 1405 (9th Cir.1985); Gay, 694 F.2d at 537. However, the requirements a disparate impact plaintiff must meet "are in some respects more exacting than those of a disparate treatment case. A disparate impact plaintiff 'must not merely prove circumstances raising an inference of discriminatory impact; he must prove the discriminatory impact at issue.' " Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 482 (9th Cir.1983) (citing Johnson v. Uncle Ben's, Inc., 657 F.2d 750, 753 (5th Cir.1981), cert. denied, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982) ). This is usually done by establishing "that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants." Id.
 
 
 12
 Lowe does not question the validity of the tests that are used to rank the applicants on the eligibility lists. Rather, she claims that the use of eligibility lists that have delayed effective dates and that expire automatically, combined with the practice of lateral hiring, has a disparate impact on Blacks. She contends that these practices, regardless of the City's motivation, result in a disproportionately low number of job offers to Blacks.
 
 
 13
 Assuming arguendo that Lowe asserted a cognizable disparate impact claim, her claim did not survive the City's motion for summary judgment. Lowe did not offer affidavits or documentary evidence sufficient to support her claim; her assertions are made primarily in memoranda of law, not by way of proferred facts.[3] Thus, the district court correctly concluded that Lowe failed to establish a prima facie case of disparate impact.
 
 C. Disparate Treatment on the Basis of Race
 
 14
 Lowe also contends that the City intentionally discriminated against her and that she is therefore entitled to proceed under Title VII on a disparate treatment theory.[4] In a Title VII disparate treatment case, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973); Diaz v. American Telephone & Telegraph, 752 F.2d 1356, 1358-59 (9th Cir.1985).
 
 1. The Prima Facie Case
 
 15
 To establish a prima facie case of discrimination in a disparate treatment case, a plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); accord United States Postal Service v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). A common way to establish an inference of discrimination is to show that the four requirements set forth in McDonnell Douglas are met:
 
 
 16
 1. that the plaintiff belongs to a class protected by Title VII;
 
 
 17
 2. that the plaintiff applied and was qualified for a job for which the employer was seeking applicants;
 
 
 18
 3. that, despite being qualified, the plaintiff was rejected; and
 
 
 19
 4. that, after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of comparable qualifications.
 
 
 20
 See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. Satisfaction of the McDonnell Douglas criteria is sufficient to establish a prima facie case. Furnco Construction Corp. v. Waters, 438 U.S. 567, 575, 98 S.Ct. 2943, 2948-49, 57 L.Ed.2d 957 (1978); Diaz, 752 F.2d at 1359; Spaulding v. University of Washington, 740 F.2d 686, 700 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); O'Brien v. Sky Chefs, Inc., 670 F.2d 864, 868 n. 1 (9th Cir.1982); Lynn v. Regents of the University of California, 656 F.2d 1337, 1340-41 (9th Cir.1981); White v. City of San Diego, 605 F.2d 455, 458 (9th Cir.1979).
 
 
 21
 As a Black, Lowe belongs to a class protected by Title VII. Both parties agree that she was qualified for the position because she passed the examination and that at some point she was rejected. Thus there is no disagreement that Lowe met the first and third parts of the McDonnell Douglas requirements for establishing a prima facie case. But in order to satisfy the remaining requirements it was necessary for Lowe to establish that an opening existed at the time she applied or afterwards, and that after she was rejected the City continued to accept applications from comparably qualified applicants. See Gay, 694 F.2d at 547; Chavez v. Tempe Union High School District, 565 F.2d 1087, 1091 (9th Cir.1977).
 
 
 22
 The City contends that Lowe failed to establish a prima facie case because no entry level job existed on the police force during the time the eligibility list which contained Lowe's name was active. According to the City, Lowe did not "apply," for purposes of the McDonnell Douglas test, until the eligibility list which contained her name became effective. The City also contends that the automatic expiration of the eligibility list on February 1, 1983 did not constitute a rejection. We cannot accept either of the City's arguments.
 
 
 23
 McDonnell Douglas' § second prima facie case requirement relates only to whether there was an opening either when the plaintiff applied or at any time her application was pending. The City advertised job openings on the police force prior to the time Lowe filed her application and Logans acknowledged that there was an opening after the time Lowe completed the application process--the opening that Razo was subsequently hired to fill. The City does not contend that there was "no opening" at any relevant time prior to the date of Razo's employment. It is not relevant for purposes of this requirement whether the City had a legitimate reason for delaying the effective date of the eligibility list on which Lowe's name was placed. Any such reason might undermine the inference of discrimination raised once a prima facie case has been established, but the order of proof set forth in McDonnell Douglas does not permit us to consider rebuttal evidence at the prima facie case stage. Rather, in a Title VII disparate treatment case such evidence is considered during the next analytic steps when we evaluate the City's articulated nondiscriminatory reason for not hiring the plaintiff. Thus, Lowe "applied" when she filed her application; she clearly met the second requirement.
 
 
 24
 Lowe also satisfied the fourth McDonnell Douglas requirement. After February 1, 1983, the City no longer considered Lowe an active, eligible applicant. Yet, the City does not contend that it ceased hiring entry-level police officers at that time, or that it suddenly changed the qualifications required of eligible candidates. Rather, it explains that eligibility lists automatically expire after six months. As with its practice of delaying the effective dates of its eligibility lists, the City may have a legitimate reason for maintaining the lists for only six months. However, any such justification, like any justification the City asserts for delaying the effective dates of the lists, may be considered only when we evaluate the articulated nondiscriminatory reason for not hiring the plaintiff. Whatever its reason, the City rejected Lowe on February 1, 1983 and continued to accept applications from similarly qualified candidates. Lowe has thus satisfied the final part of the McDonnell Douglas four-part test and established a prima facie case of discrimination.[5]
 
 
 25
 In addition, a plaintiff can establish a prima facie case of disparate treatment without satisfying the McDonnell Douglas test. See Diaz, 752 F.2d at 1361; Gay, 694 F.2d at 550. Lowe has provided evidence that suggests that "the employment decision was based on a discriminatory criterion illegal under the [Civil Rights] Act." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Logans' statement to Lowe regarding the composition of the Monrovia police force and her suggestion that Lowe apply in Los Angeles instead of Monrovia, when viewed in conjunction with the fact that no Blacks were employed by the Monrovia Police Department at the time Lowe applied, create an inference of discrimination sufficient to establish a prima facie case.[6] Because Lowe has met the four-part McDonnell Douglas requirements and alternatively because she has provided direct and circumstantial evidence of discriminatory intent, she established a prima facie case of disparate treatment on the basis of race. Thus the district court erred when it based its award of summary judgment on the ground on which it relied.
 
 
 26
 2. The City's Articulated Nondiscriminatory Reason for Rejecting Lowe and the Evidence of Pretext
 
 
 27
 Because we are reviewing a district court's order granting summary judgment, we must examine the record to determine if there is any other basis for affirmance. Diaz, 752 F.2d at 1362. If the result below were correct, we would affirm even if the district court relied on an erroneous ground. Keniston v. Roberts, 717 F.2d 1295, 1300 & n. 3 (9th Cir.1983) (citing Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937) ). In order to determine whether any other basis for affirmance exists, we must examine the portions of the record that relate to the second and third steps governing the order of proof in disparate treatment cases.
 
 
 28
 After Lowe established a prima facie case of employment discrimination, the burden shifted to the City to rebut the presumption of discrimination by articulating a nondiscriminatory reason for not hiring her. To accomplish this, the City was only required to set forth a legally sufficient explanation for rejecting Lowe's application. Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094-95; Teamsters, 431 U.S. at 359, 97 S.Ct. at 1866-67. The City's articulated reason for not hiring Lowe was that it followed a long-standing nondiscriminatory practice with respect to the creation and maintenance of eligibility lists. The City contends that under the procedures it follows no entry-level job opening existed during the time the eligibility list which contained Lowe's name was in effect. There may very well be administrative constraints that would justify the City's use of a delayed effective-date, automatic-expiration system for eligibility lists. It may also be that it is preferable for the City to hire experienced officers in some instances. In any event, we assume, arguendo, that the City succeeded in articulating a legitimate nondiscriminatory reason for failing to hire Lowe.[7]
 
 
 29
 However, on a motion for summary judgment in a disparate treatment case, the defendant's articulation of a legitimate nondiscriminatory reason serves only to shift the burden back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. See Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1094-95. Lowe contends that the reason the City uses eligibility lists that have delayed effective dates and expire automatically is to mask its discriminatory hiring practices. She alleges that the City hires from eligibility lists if the candidates who rank high on the list are not Black but hires laterally when Blacks rank high on the lists. Lowe attempts to support this contention with a claim that Blacks are selected in a proportion smaller than their percentage in the pool of actual applicants. She alleges that six Blacks qualified on the eligibility lists between 1979 and 1982 but none were hired.[8]
 
 
 30
 A disparate treatment plaintiff may rely on statistical evidence to establish a prima facie case, see Diaz, 752 F.2d at 1362, or "to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual," id. at 1363. As we explained in Diaz,
 
 
 31
 Statistical data is relevant because it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices. Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue.
 
 
 32
 Id. While statistical data may be extremely useful in demonstrating that a defendant's articulated reason for an employment decision is pretextual, in this case, however, as we noted earlier, Lowe's assertions of racial disparities in hiring are not supported by a proper statistical record. See supra p. 1005 & note 3.
 
 
 33
 Nevertheless, we conclude that there is a genuine issue of material fact with respect to whether the reasons or motivations for the City's actions were in fact discriminatory. A plaintiff "may succeed in persuading the court that she has been the victim of intentional discrimination ... either by directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. In order to do so, the plaintiff need not necessarily offer evidence beyond that offered to establish a prima facie case. Id. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The trier of fact may consider the same evidence that the plaintiff has introduced to establish a prima facie case in determining whether the defendant's explanation for the employment decision is pretextual. See id. Diaz, 752 F.2d at 1363 n. 8.
 
 
 34
 In other civil rights contexts, we have made it clear that "the decision as to an employer's true motivation plainly is one reserved to the trier of fact." Peacock v. DuVal, 694 F.2d 644, 646 (9th Cir.1982) (quoting Nicholson v. Board of Education Torrance Unified School District, 682 F.2d 858, 864 (9th Cir.1981) ). This notion--that the question of an employer's intent to discriminate is "a pure question of fact," Pullman-Standard v. Swint, 456 U.S. 273, 287-88, 102 S.Ct. 1781, 1789-90, 72 L.Ed.2d 66 (1982), to be left to the trier of fact--is well-established, id. at 288, 102 S.Ct. at 1789-90 (citing Dayton Board of Education v. Brinkman, 443 U.S. 526, 534, 99 S.Ct. 2971, 2977, 61 L.Ed.2d 720 (1979); Commissioner v. Duberstein, 363 U.S. 278, 286, 80 S.Ct. 1190, 1197, 4 L.Ed.2d 1218 (1960); United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949) ), and clearly applies in Title VII cases. Id. Moreover, an employer's true motive in an employment decision is rarely easy to discern. As we have previously noted, "[w]ithout a searching inquiry into these motives, those [acting for impermissible motives] could easily mask their behavior behind a complex web of post hoc rationalizations." Peacock, 694 F.2d at 646.
 
 
 35
 As explained above, a plaintiff may establish a prima facie case of disparate treatment by satisfying the McDonnell Douglas four-part test, thereby creating a rebuttable presumption of discriminatory treatment, or by presenting actual evidence, direct or circumstantial, of the employer's discriminatory motive. When a plaintiff does not rely exclusively on the presumption but seeks to establish a prima facie case through the submission of actual evidence, very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive--including evidence as diverse as "the [defendant's] reaction, if any, to [plaintiff's] legitimate civil rights activities; and treatment of [plaintiff] during his prior term of employment; [defendant's] general policy and practice with respect to minority employment," McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825-26--may suffice to raise a question that can only be resolved by a factfinder. Once a prima facie case is established either by the introduction of actual evidence or reliance on the McDonnell Douglas presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the "elusive factual question of intentional discrimination," Burdine, 450 U.S. at 255 n. 8. See, e.g., Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1459 (9th Cir. 1985) (courts generally cautious about granting summary judgment in Title VII cases where intent involved); Sweat v. Miller Brewing Co., 708 F.2d 655, 657 (11th Cir. 1983) (" 'granting of summary judgment is especially questionable' " in employment discrimination cases (quoting Hayden v. First National Bank, 595 F.2d 994, 997 (5th Cir. 1979))); McKenzie v. Sawyer, 684 F.2d 62, 67 (D.C. Cir. 1982) (factual disputes in most Title VII cases preclude summary judgment). Moreover, when a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision.
 
 
 36
 According to the plaintiff's sworn affidavit, Logans, the Personnel Division Manager for the City, made a point of telling Lowe that the Monrovia police force had no women and no Blacks. Logans then encouraged Lowe to apply for a position as a police officer in Los Angeles rather than Monrovia. Logans explained that Lowe should do so because the Los Angeles police force was "literally begging for minorities and especially females." One clear inference that could reasonably be drawn from this statement is that the Monrovia police force was not begging for--or even interested in--such applicants.
 
 
 37
 Viewing all the evidence, including Logans' statements, in the light most favorable to Lowe and resolving all inferences in her favor, as we must, we conclude that there is a genuine issue of material fact regarding the City's motive in failing to hire Lowe.[9] Accordingly, we cannot affirm the district court's grant of summary judgment as to the Title VII race discrimination claim.
 
 IV. SECTION 1981 AND SECTION 1983 CLAIMS
 A. Section 1981
 
 38
 Lowe alleges that the City's hiring procedures violated 42 U.S.C. Sec. 1981 (1982). Her claim is based on both alleged sex and race discrimination. However, section 1981 redresses only discrimination based on race. Shah v. Mount Zion Hospital and Medical Center, 642 F.2d 268, 272 n. 4 (9th Cir.1981). Accordingly, the district court properly dismissed Lowe's section 1981 sex discrimination claim. See White v. Washington Public Power Supply System, 692 F.2d 1286, 1290 (9th Cir.1982).
 
 
 39
 We cannot agree, however, with the district court's rejection of Lowe's section 1981 race discrimination claim. Title VII and section 1981 are overlapping but independent remedies for racial discrimination in employment. Johnson v. Railway Express Agency, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720-21, 44 L.Ed.2d 295 (1975). Claims of disparate treatment arising under Title VII and section 1981 are parallel because both require proof of intentional discrimination. Gay, 694 F.2d at 537.[10] The same standards are used to prove both claims, Gay, 694 F.2d at 537, and facts sufficient to give rise to one are sufficient to give rise to the other.
 
 
 40
 For the same reasons that we held the district court's grant of summary judgment on Lowe's Title VII claim to be improper, we must reverse its grant of summary judgment on Lowe's section 1981 claim. Lowe has presented sufficient evidence of discriminatory motive to entitle her to a trial on this claim as well.
 
 B. Section 1983
 
 41
 Lowe also alleges that she is entitled to relief under 42 U.S.C. Sec. 1983 (1982). Because section 1983 incorporates the equal protection standards that have developed in fourteenth amendment jurisprudence, see Chavez v. Tempe Union High School District, 565 F.2d 1087, 1095 (9th Cir.1977), in order to prevail on her section 1983 claim alleging race and sex discrimination Lowe must first prove that the defendants purposefully discriminated against her either because of her race or her sex. See Massachusetts v. Feeney, 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979); Washington v. Davis, 426 U.S. 229, 239-42, 96 S.Ct. 2040, 2047-49, 48 L.Ed.2d 597 (1976). The City could then successfully defend against the charge only if it could demonstrate that the discriminatory treatment was justified. Because a plaintiff does not have to exhaust administrative remedies before bringing a section 1983 action, Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982), Lowe's failure to file an EEOC sex discrimination complaint does not bar her section 1983 sex discrimination claim.
 
 
 42
 The City denies that it has intentionally discriminated against Lowe. In the equal protection context, just as in a Title VII disparate treatment case, discriminatory intent need not be proved by direct evidence. "[D]etermining the existence of a discriminatory purpose demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Rogers v. Lodge, 458 U.S. 613, 102 S.Ct. 3272, 3276, 73 L.Ed.2d 1012 (1982) (quoting Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977); citing Washington v. Davis, 426 U.S. at 242, 96 S.Ct. at 2049).
 
 
 43
 Lowe has established a triable issue regarding her claim that the City purposefully discriminated against her because of her race. See supra Section III.C. Because the evidence that satisfied the McDonnell Douglas test and the evidence of Logans' statements is at least as probative with regard to sex discrimination as it is with regard to race discrimination, Lowe has also established a triable issue regarding her claim that the City purposefully discriminated against her on the basis of sex. The City does not claim in this case that it has a constitutionally permissible justification for intentional discrimination on the basis of race or sex.
 
 
 44
 Accordingly, summary judgment on the section 1983 claims was inappropriate.
 
 C. Qualified Immunity
 
 45
 The district court concluded as a matter of law that the individual defendants were shielded from liability under section 1981 and section 1983. Government officials are entitled to qualified immunity only if a reasonable person would not have been aware that the actions at issue violated well established statutory or constitutional rights. Davis v. Scherer, --- U.S. ----, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Whether the City employees are immune turns on the objective reasonableness of their conduct in light of clearly established law, not on their subjective good faith. Tubbesing v. Arnold, 742 F.2d 401, 405 (9th Cir.1984).
 
 
 46
 When the conduct that Lowe challenges took place it was well established that Lowe had a constitutional right not to be refused employment as a police officer because of her race or sex. See supra pp. 1010-1011. A reasonable person would have been aware that the practices that Lowe complains of were unlawful if, as she alleges, they were intended to deprive Blacks or women of employment opportunities. Therefore, the district court erred in concluding that the officials were immune from suit.
 
 V. CONCLUSION
 
 47
 The district court correctly dismissed Lowe's Title VII and section 1981 sex discrimination claims; the Title VII claim was jurisdictionally barred and sex discrimination cannot be redressed under section 1981. However, the district court erred when it granted the City's summary judgment motion with respect to Lowe's Title VII, section 1981, and section 1983 race discrimination claims. Although Lowe did not offer sufficient facts to support her assertions of disparate impact, she did establish a prima facie case of disparate treatment on the basis of race and raised a genuine issue of material fact regarding the City's motivation in failing to hire her. The district court also erred with respect to Lowe's section 1983 sex discrimination claim. Lowe alleged sufficient facts to withstand the City's motion with respect to that claim. Finally, the district court erred in concluding that the individual defendants enjoy a qualified immunity from the section 1981 and section 1983 claims.
 
 
 48
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 49
 SCHWARZER, District Judge, dissenting in part.
 
 
 50
 The majority opinion holds that Lowe has made out a prima facie case of disparate treatment simply by showing that she was not hired by the City to fill a vacancy. It treats the City's rules and practices under which an applicant must qualify to be hired as mere evidence admissible at trial to rebut an inference of discrimination.
 
 
 51
 In so doing, the majority stands the case on its head,[1] ignores the settled law of this circuit, and creates a precedent that threatens the integrity of commonly used non-discriminatory civil service hiring systems.
 
 
 52
 In addressing the question whether Lowe made out a prima facie case, it is useful to recall the Supreme Court's observation that
 
 
 53
 [t]he method suggested in McDonnell Douglas for pursuing this inquiry [whether a prima facie case has been established], however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under McDonnell Douglas raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.
 
 
 54
 Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). This court elaborated on the reasoning in Furnco in Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531 (9th Cir.1982), stating that the McDonnell Douglas test "presents the legal question whether the plaintiff has met his burden of production, coming forward with sufficient probative evidence to permit a rational jury or court to find the material facts in his favor, thus avoiding a directed verdict or motion for judgment as a matter of law." Id. at 543, n. 10.
 
 
 55
 The material facts are undisputed. Lowe filed her application with the City on January 19, 1982. She took and passed the written and oral examinations in May, 1982. The results of the examinations and the ranking of the applicants were announced in June, 1982, and an eligibility list of successful applicants was certified to take effect on August 1, 1982. Lowe ranked eleventh on that list, based on her grades on the examinations.
 
 
 56
 Meanwhile on June 7, 1982, the City hired a male hispanic applicant from its lateral transfer list to fill a vacancy. No additional persons were hired until after February 1, 1983, the date on which the list with Lowe's name expired.
 
 
 57
 It is not disputed that the procedure followed in this case conformed to the City's established rules and practices. Every six months the City certifies a new list of eligible applicants for entry level positions ranked in order of grades. The list remains in effect for six months when a new list is certified. In addition the City maintains a lateral entry level eligibility list from which it also fills vacancies for lateral entry.
 
 
 58
 These facts demonstrate that Lowe failed to establish a prima facie case for three reasons:
 
 
 59
 (1) At the time when Razo was hired in June, Lowe was not yet eligible to be hired because her name did not appear on a then effective eligibility list;
 
 
 60
 (2) During the period when she was eligible, there were no job openings;(3) Even if Lowe were treated as having been eligible in June, her position as the eleventh on the eligibility list precludes any inference that the failure to hire her "more likely than not [was] based on the consideration of impermissible factors." Furnco, supra.[2]
 
 
 61
 This case falls squarely within principles well-settled in this circuit. A plaintiff fails to establish the second element of McDonnell Douglas if she does not show that she completed the application process for the position, Tagupa v. Board of Directors, 633 F.2d 1309 (9th Cir.1980), and that she was a qualified applicant when the job opening existed. Morita v. Southern Cal. Permanente Medical Group, supra; Chavez v. Tempe U. High Sch. Dist. No. 213, 565 F.2d 1087 (9th Cir.1977); Gay v. Waiter's and Dairy Lunchmen's Union, supra. A plaintiff fails to establish the third element by failing to show that she was barred from consideration for the position or that she was not considered when others of her qualifications were. White v. City of San Diego, 605 F.2d 455 (9th Cir.1979).[3]
 
 
 62
 The majority sweeps all of this aside by holding that "Lowe 'applied' when she filed her application" and that "the City rejected Lowe on February 1, 1983 [when the eligibility list expired]." (At 1006) To reach those conclusions, however, the majority has to disregard entirely the City's established rules and practices in accordance with which it acted. Lowe challenged those rules and practices as having a disparate impact on Blacks. The court below granted summary judgment on that issue and the majority affirms. Thus we must accept those rules and practices as racially neutral.[4]
 
 
 63
 Under those rules and practices, the City hired only persons whose names appeared on a then certified eligibility list and a person did not become eligible for hire until she had qualified and been placed according to her rank on a certified list. There is no evidence to support the majority's characterization of the City's practice as "delaying the effective dates of its eligibility lists." (Majority at 1006) What the evidence shows is that the City regularly prepares a new list every six months and maintains it in effect for six months. Before a new list is prepared it advertises for applicants who may then take the examinations to qualify for placement on the new list. There is no evidence that the City in preparing and certifying the August 1, 1982, eligibility list acted other than in the ordinary course.
 
 
 64
 Nor is there any evidence that in permitting the August 1, 1982, list to expire on February 1, 1983, to be replaced by a new list, the City acted other than in accordance with its established rules and practices.
 
 
 65
 "[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally." Texas Dept. of Community Affairs v. Burdine, supra 450 U.S. at 258, 101 S.Ct. at 1096. Who are similarly situated employees? Presumably it would be others who had applied but whose eligibility list had not yet gone into effect when a job was filled, or whose eligibility list had expired when a job was filled. There is no evidence of any other person so situated, let alone that any one in that position was treated differently. When the City made the decision to fill a position in June, it did not hire anyone who under its system was not eligible for consideration. During the period when Lowe was eligible, it did not hire anyone. When Lowe's list expired, it did not prevent her from reapplying for future consideration.
 
 
 66
 The majority's concern, of course, is that the City's system enables it to fill a vacancy with some one else if a minority applicant is coming up on the next eligibility list before that eligibility list goes into effect. It may be assumed that the City's system, as the majority says, "permit[s] the manipulation of hiring dates and job openings." (At 1010 n. 10, emphasis added). The trouble with that reasoning, however, is that a defendant cannot be held liable for a wrongful act without some evidence from which a trier of fact could find by a preponderance of the evidence not that he was capable of committing it but that he did commit it. Here there is not an iota of such evidence.[5]
 
 
 67
 Inasmuch as there is no evidence of disparate treatment, the City's Personnel Division Manager's alleged statement to Lowe that the City's police force had no women and no Blacks and her encouraging Lowe to apply to the Los Angeles Police Department instead is irrelevant. Evidence of motive is insufficient to establish a prima facie case in the absence of evidence of disparate treatment. See Hagans v. Andrus, 651 F.2d 622, 626 (9th Cir.), cert. denied sub nom. Hagans v. Watt, 454 U.S. 859, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); cf. Thorne v. City of El Segundo, 726 F.2d 459, 464 (9th Cir.1983).[6] Here there is none.
 
 
 68
 It is appropriate to take note that the system of hiring off eligibility lists ranking applicants in order of their examination scores and having a limited life is common practice for public agencies. See, e.g. Cal.Gov't Code Secs. 18900 et seq., Secs. 19050 et seq. Such a system promotes fair and open hiring based on qualifications; it offers early applicants a chance to qualify for job openings created after they have first applied while giving later applicants a chance to gain high ranking on a new list if their qualifications entitle them to it. So long as such a system is not shown to have a disparate impact, mere adherence to it does not afford a basis for finding disparate treatment. The majority's conclusion to the contrary raises the spectre of a rule under which minority employees must be considered for employment whenever openings exist, regardless of whether they are eligible under the public agency's hiring procedures. Title VII does not call for such preferential treatment. Texas Dept. of Community Affairs v. Burdine, supra, 450 U.S. at 259, 101 S.Ct. at 1096. See also Atonio v. Wards Cove Packing Co., Inc., 768 F.2d 1120, 1132 (9th Cir.1985) ("essential that employers remain free to set employment qualifications as they honestly saw fit, so long as those qualifications were not based on race, color, religion, sex, or national origin."); and EEOC Uniform Guidelines on Employee Selection Procedures, 29 CFR Sec. 1607.1B (no restriction on "selection procedures where no adverse impact results") Sec. 1607.11 (prohibition against disparate treatment does not preclude selection procedures in compliance with guidelines).
 
 
 69
 Because the undisputed facts would not permit a rational jury or judge to find that Lowe was subjected to disparate treatment or that, as the eleventh on the list, she would have been hired but for the City's discriminatory motive, I dissent from parts III.C. and IV and would affirm the judgment below.[7]
 
 
 
 *
 Hon. William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 We accept Lowe's version of her conversation with Logans because when we review an order granting summary judgment to the defendant we are required to view the facts in the light most favorable to the plaintiff. Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358 n. 1 (9th Cir.1985)
 
 
 [2]
 In the section of her brief devoted to her disparate treatment claim, Lowe argues that the City is obligated to adhere to its affirmative action plan. She does not raise the affirmative action contentions as a separate claim on appeal. See infra note 7
 
 
 [3]
 Lowe's assertions of racial disparities in hiring are not supported by a proper statistical record. The only racial breakdown of applicants is for the year 1982
 
 
 [4]
 The dissent is based on the proposition that a plaintiff who claims intentional employment discrimination, and alleges that an established procedure under which she was denied employment permits discriminatory treatment in particular cases, may not challenge the discriminatory application of the procedure to her unless she can show that it has been applied with similar discriminatory results to an entire class of job applicants. We disagree. The availability of a discriminatory treatment claim is not dependent on the plaintiff's ability to prove a discriminatory impact claim. To the contrary, as long as a plaintiff can establish an individual case of intentional discrimination, there is no need to show that the employer has also discriminated against an entire class
 
 
 [5]
 We note that one of our recent cases, Hagans v. Clark, 752 F.2d 477 (9th Cir.1985), if read casually, could suggest that even a plaintiff who has satisfied the four-part McDonnell Douglas test may have failed to establish a prima facie case for purposes of some employment decisions. Of course, we did not intend in that case to establish a rule in direct contravention of the Supreme Court's statement of the law, as a more careful reading of the case makes clear. When we used the term "prima facie case" in Hagans, we were referring to the plaintiff's burden of putting on a case-in-chief that is sufficient to defeat a motion under Fed.R.Civ.P. 41(b) and thus to require the defendant to put on its case in opposition. We were not referring to the rebuttable presumption that a plaintiff must establish, as the first step in a Title VII case, before the defendant must articulate a legitimate, nondiscriminatory reason for the employment decision. See Burdine, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7 (defining "prima facie case" for purposes of McDonnell Douglas test). In Hagans, as in Correa v. Nampa School District No. 131, 645 F.2d 814 (9th Cir.1981), the plaintiff had already presented her case-in-chief at trial and the defendant had introduced evidence by way of cross-examination and depositions. See Hagans, 752 F.2d at 483. It was irrelevant at that stage of the proceedings whether the plaintiff had "met her initial [prima facie case] burden under McDonnell Douglas, [since the defendant] presented sufficient evidence in the form of affidavits, depositions and cross-examination of [the plaintiff's] witnesses to establish a reasonable, non-discriminatory reason for her discharge...." Correa, 645 F.2d at 816; see also United States Postal Service v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (When evidence is presented to a fact-finder at trial, "the McDonnell-Burdine presumption 'drops from the case,' ... and 'the factual inquiry proceeds to a new level of specificity.' "); Kimbrough v. Secretary of U.S. Air Force, 764 F.2d 1279, 1283 (9th Cir.1985) (same)
 
 
 [6]
 Lowe also contends that the City's failure to comply with its voluntarily adopted affirmative action plan raises an inference of intentional discrimination. Both public and private employers may voluntarily adopt race-conscious affirmative action plans to eliminate traditional patterns of segregation and imbalances in the work force, and Congress may require such plans. See Fullilove v. Klutznick, 448 U.S. 448, 482, 100 S.Ct. 2758, 2776-77, 65 L.Ed.2d 902 (1980) (opinion of Burger, C.J.); United Steelworkers v. Weber, 443 U.S. 193, 207-09, 99 S.Ct. 2721, 2729-30, 61 L.Ed.2d 480 (1979); Johnson v. Transport. Agency, 748 F.2d 1308, 1314 (9th Cir.1984). We need not determine at this time whether a defendant's failure to follow an affirmative action plan, once voluntarily adopted, could by itself demonstrate discriminatory intent. In any particular case the significance of such a failure may depend on the circumstances, including the reasons why the defendants failed to comply with the plan. Any evidence that indicates that a defendant intentionally circumvented an affirmative action plan would, of course, be probative regarding the defendant's motives in making a given employment decision
 
 
 [7]
 The City also contends that even if it had filled the June 7, 1982 opening by hiring from the eligibility list that contained Lowe's name, Lowe would not have been offered the job. According to the City, Lowe was the eleventh candidate on the list. Lowe offered evidence purporting to show that she should have been second on the list. Lowe's proper place on the list does not matter. Whether Lowe was second or eleventh on the list, she would not have been the first person offered the position that was filled on June 7, 1982. Nevertheless, the fact that Lowe was not the first person on the list does not justify the City's failure to hire her. Regardless where Lowe ranked on the list, she eventually would have received a job offer if the City did not treat lists as automatically expiring after six months and did not occasionally hire laterally, practices that Lowe alleges the City engages in so that it can avoid hiring from its "Entry Level" list when Blacks and women qualify for inclusion
 
 
 [8]
 Lowe also claims that the City "holds over" non-Blacks from old "Entry Level" eligibility lists and hires them later. This assertion is without support in the record; it is made by way of a memorandum of law rather than by proferred facts
 
 
 [9]
 Our dissenting colleague concludes that no discriminatory act could have occurred in this case because the original opening was filled before the plaintiff became eligible for employment under the applicable civil service rules and no other openings were created until after her eligibility expired. The point is, however, that the rules at issue permit the manipulation of hiring dates and job openings. They are not as mechanical as the dissent suggests. When the City receives an application from a minority recruit applicant it can fill existing vacancies from a separate lateral list and thus foreclose the existence of an opening at the time the minority member completes the eligibility requirements and the new eligibility list becomes effective. Similarly, it can allow a list with high-ranking minority members to expire before announcing the existence of the next set of openings. Whether the City acted with discriminatory intent in any particular case is a matter for determination by a factfinder. It is not correct to say, as our dissenting colleague does, that the mere existence of a system of the nature of the City's precludes plaintiffs from showing intentional discriminatory treatment. The existence of such a system may provide a basis for the City's articulation of a nondiscriminatory reason for its actions, but it does not foreclose a plaintiff from challenging the City's motivation for adopting or invoking the system, or applying it in a particular manner. Here, as we have explained supra, the plaintiff has raised a genuine issue of fact as to whether the true motive for the City's actions was discriminatory
 
 
 [10]
 A plaintiff suing under section 1981 may prevail only by establishing intentional discrimination, i.e., disparate treatment. Proof of disparate impact is insufficient. Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982); Craig v. County of Los Angeles, 626 F.2d 659, 668 (9th Cir.1980)
 
 
 [1]
 The majority confuses the framework of rules and practices within which the City acted with non-discriminatory reasons for an employment decision which may rebut a prima facie case. (pp. 1007-1008) See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (after plaintiff has made a prima facie case, burden shifts to employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection") It does so by in effect shifting a part of plaintiff's burden to make a prima facie case--her qualification to be hired--onto defendant by making it a part of its rebuttal case. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); Morita v. Southern Cal. Permanente Medical Group, 541 F.2d 217, 219 (9th Cir.1976). The error in this approach is discussed in what follows
 
 
 [2]
 At oral argument, moreover, counsel for the City represented that the City is obligated to hire from among the top three candidates on any list
 Inasmuch as the only issue concerns the filling of the vacancy in June 1982, it is not necessary to address the majority's point that if the lists did not automatically expire, the City would have had to hire Lowe eventually, no matter how low she ranked. (Majority at 1007 n. 7)
 
 
 [3]
 The City contends that Lowe failed to satisfy both the second and third elements. See App'ee Br. 10-16
 
 
 [4]
 The majority rejects "Lowe's challenge to lateral hiring and the use of eligibility lists with delayed effective dates and automatic expiration times" because she "did not offer affidavits or documentary evidence sufficient to support her claim [of disparate impact]." (At 1005) It is difficult to follow the majority's logic under which these same practices, held to be neutral under the impact analysis, are held to raise an inference of disparate treatment. (At 1006)
 
 
 [5]
 Thus the majority misconceives the basis of this dissent. Obviously, it is not that "[t]he availability of a discriminatory treatment claim is ... dependent on the plaintiff's ability to prove a discriminatory impact claim." (At 1005 n. 5) Nor is it "that the mere existence of a system of the nature of the City's precludes plaintiffs from showing intentional discriminatory treatment." (At 1010 n. 10) Rather it is that a showing of nothing more than hiring in accordance with rules and practices found by the majority not to have been shown to have a discriminatory impact is insufficient to prove a prima facie case of discriminatory treatment
 
 
 [6]
 The majority opinion correctly states that a plaintiff can establish a prima facie case of disparate treatment without satisfying the McDonnell Douglas test" (At 1007) but no case to this writer's knowledge has ever held that a plaintiff can do so without some proof of disparate treatment. See the cases cited by the majority (At 1007), Diaz v. American Telephone & Telegraph, 752 F.2d 1356, 1361 (9th Cir.1985) (plaintiff not precluded from suit merely because person of same protected class selected for challenged position); Gay v. Waiters and Dairy Lunchmen's Union, supra, 694 F.2d at 550 (reliable generalized statistical data relevant and admissible at prima facie stage of disparate treatment case to determine whether employment decision was product of intentional discrimination.)
 
 
 [7]
 In the light of the conclusion I reach, it is not necessary to address the majority's discussion of the individual defendants' qualified immunity. I do not understand, however, how "[a] reasonable person would have been aware that the practices Lowe complains of were unlawful" when this court itself has failed to find them so (At 1011); that awareness surely cannot be attributed ex post facto on the strength of allegations of discriminatory intent subsequently made in litigation