972 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Steve L. THOMAS, Plaintiff-Appellant,
v.
CALIFORNIA STATE DEPARTMENT OF CORRECTIONS, Defendant-Appellee.
 No. 91-15870.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 23, 1992.
Decided Aug. 18, 1992.
 
 Before CANBY, REINHARDT and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Steve L. Thomas ("Thomas"), a black male, applied for a position as a word processing technician with appellee California State Department of Corrections ("the Department"). After the Department selected a white male for the position, Thomas filed a pro se action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging discrimination on the basis of race and sex.[1] The Department alleges that it rejected Thomas because the applicant selected was better qualified.
 
 
 3
 Following discovery, the Department moved for summary judgment under Fed.R.Civ.P. 56(b), alleging that Thomas failed to establish a genuine issue of material fact regarding whether the Department rejected him on the basis of his race. The court found that Thomas submitted insufficient evidence either to meet his prima facie burden under a disparate impact theory, or to indicate that the Department's reasons for rejecting him under a disparate treatment theory were pretextual. Accordingly, it granted the Department's motion and dismissed Thomas's action. Thomas appeals.
 
 A. Disparate Impact
 
 4
 Disparate impact is established when a facially neutral business practice has an adverse impact on a protected group. Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971); Lowe v. City of Monrovia, 775 F.2d 998, 1004 (9th Cir.1985), as amended, 784 F.2d 1407 (9th Cir.1986). No discriminatory intent is required. Id. To establish a prima facie case under a disparate impact theory, a plaintiff "must prove the discriminatory impact at issue" by pointing to a specific employment practice that "selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants." Id. (quoting Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 482 (9th Cir.1983)); Wards Cove Packing Co. v. Antonio, 490 U.S. 642 (1989). The plaintiff must support his claim with affidavits or other documentary evidence, such as a statistically significant record. See Lowe, 775 F.2d at 1004. Once a plaintiff has established a prima facie case, the burden shifts to the employer to show that the practice in question is a business necessity. Id.
 
 
 5
 Here, the district court correctly held that Thomas failed to make a prima facie case of disparate impact. First, Thomas did not produce sufficient statistical evidence to show that the Department's selection process had a disparate impact on blacks. Thomas's exhibits demonstrate only that of the three word processing technicians hired between July 1987 and March 1989, two were Hispanic and one was white. Plaintiff's Exhibit 11, which provides incomplete data on hires, rehires, transfers and promotions for the clerical areas of the Department for the year ending June 30, 1988, shows that out of twenty-five (25) new hires, eight (8) were Hispanic, seventeen (17) white, and none black. We have consistently deemed samples of this size and larger to be statistically insignificant for purposes of proving discrimination. See, e.g., Mayor v. Educational Equality League, 415 U.S. 605, 621 (1974) (sample size of 13); Contreras v. City of Los Angeles, 656 F.2d 1267, 1273 (9th Cir.1981) (sample size of 17), cert. denied, 455 U.S. 1021 (1982). Nor did Thomas submit any statistical analysis or affidavits from statisticians showing that his data are statistically significant. The data submitted by Thomas thus do not form a sufficient basis for a disparate impact claim.
 
 
 6
 Thomas additionally failed to produce any statistical data showing the percentage of qualified blacks in the labor market of word processing technicians, or even within the pool of clerical workers. Without this evidence, Thomas could not meet his prima facie burden of showing the necessary disparate impact. See Wards Cove, 490 U.S. at 650-51.
 
 
 7
 Even if Thomas had produced an adequate statistical record, he failed to establish a prima facie case because he did not indicate a specific business practice linked causally with the alleged statistical disparity. See id. at 656. Although Thomas alluded to the interview process as a subjective and potentially discriminatory practice, he offered no evidence of how the process had a disparate impact on blacks. Therefore, Thomas failed to meet the requirements of Wards Cove, and the district court correctly determined that Thomas had not established a prima facie case. As such, he could not survive summary judgment on this theory.
 
 B. Disparate Treatment
 
 8
 Unlike disparate impact, disparate treatment claims require that a discriminatory motive be established. The plaintiff has the initial burden of establishing a prima facie case of discrimination by introducing evidence that "give[s] rise to an inference of unlawful discrimination." Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir.1991) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) held that a plaintiff may rely on a presumption of discrimination sufficient to meet the prima facie burden if he establishes that (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from people of comparable qualifications. Id. at 802.
 
 
 9
 Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for his decision. Id. Once the employer has done so, the burden returns to the plaintiff to prove that the articulated reason is pretext. Id. at 804. The ultimate burden of persuasion remains with the plaintiff to prove by a preponderance of the evidence that the employer intentionally discriminated against the plaintiff. Burdine, 450 U.S. at 253. Intentional discrimination can be shown either "directly," by evidence that a discriminatory reason more likely than not motivated the employer, or "indirectly," by evidence that the employer's articulated reason lacks credibility. Lowe, 775 F.2d at 1008.
 
 
 10
 In the present case, the district court correctly found that Thomas successfully met his prima facie burden through the McDonnell-Douglas presumption. First, Thomas is a member of a protected group. Second, Thomas applied for a position for which the Department admits he was qualified. Third, despite Thomas's qualifications, he was rejected. Fourth, after Thomas's rejection, the Department considered and accepted a comparably qualified applicant. Thus, the court was correct in finding that Thomas has raised a genuine factual issue as to his prima facie case.
 
 
 11
 The district court next found that the Department had met its burden of articulating a legitimate reason for rejecting Thomas. The Department stated it selected Brooks over Thomas because Brooks was more qualified on the basis of (1) the appearance and quality of his application package, (2) his answers to interview questions, and (3) his experience. This suffices to move the burden back onto Thomas to raise a genuine issue as to whether the Department's reasons were merely pretext. Here, Thomas' burden is slight. In order to survive summary judgment in a Title VII case, a plaintiff need produce "very little" evidence of an employer's illegitimate motive because of the "elusive[ness of the] factual question of intentional discrimination." Lowe, 775 F.2d at 1009 (quotation omitted).
 
 
 12
 We consider first the Department's contention that Thomas was rejected in part because of the appearance of his resume and application package. Thomas offers Brooks's application in response. Brook's application has numerous typographical errors. It certainly does not give one a sense of confidence in the secretarial talents of its preparer. We think Brooks's application raises a genuine issue of material fact regarding whether Thomas was rejected because of the appearance of his application.
 
 
 13
 Thomas next argues that the Department's second reason for rejecting him--his answers to interview questions--should be carefully scrutinized for pretext because it is subjective and vague. Thomas is correct in that it is difficult to assess the objectivity of the evaluations of an oral interviewer. Were we to hold that the unsupported claim that a particular candidate was a "superior" interviewee was sufficient without more to require summary judgment for an employer, we would immunize from effective review all sorts of conscious and unconscious discrimination. In the absence of more detailed factual information regarding the nature and content of the interview, we cannot rely on this factor as a basis for affirming the district court.[2]
 
 
 14
 The final and most persuasive of the reasons given by the Department for hiring Brooks rather than Thomas was Thomas' relative lack of experience. Thomas argues that the district court erred in finding no genuine issue as to pretext with respect to that reason. The question is a close one. Brooks had been employed in various positions as an office clerk or office assistant II during the four years before his interview, while Thomas--although he had completed a course in word processing shortly before his interview[3]--had not had any relevant paid work experience in the previous six years. Thomas's only relevant experience in that period was a nonpaying, six-hour-per-week job that he started less than two months before his interview with the Department. However, Thomas contended that he had recently undergone extensive word processing training and, unlike Brooks, had been certified to perform that function. Moreover, Thomas persuasively asserted that while he had been unable to obtain employment, and had been compelled to live on government benefits for the past several years, his word processing training provided him with superior qualifications for the job in question and that he possessed a number of computer processing skills which Brooks did not possess. In fact, Thomas argues that Brooks was qualified only as a typist. The state chose not to appear at oral argument and thus was not present to dispute Thomas's claims; nor does the record detract from Thomas's assertions. Because the present case involves an appeal from a motion for summary judgment, we must view the evidence in a light most favorable to Thomas; in that light, we find that--based on the record before us--a rational trier of fact could conclude that Thomas was more qualified than Brooks and that the Department's articulated reasons for rejecting him were pretextual. Accordingly, we hold the district court's grant of summary judgment was improper.
 
 
 15
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 21
 
 
 [1]
 Thomas does not raise the issue of sex discrimination on appeal, and we therefore do not address it
 
 
 [2]
 Indeed, we note parenthetically that Thomas' excellent performance at oral argument in this court--especially considering the fact that he has no formal training in the law--tends to suggest that a trier of fact might be similarly favorably impressed with Thomas' performance as well
 
 
 [3]
 The district court found that "evidence of [Thomas's] continuous training does not appear in plaintiff's application package"; however, Thomas explicitly stated in the cover letter accompanying his resume that his "experience in the word processing field has been extreme in training and minim[ ]al in actual paid experience."