**Kenneth D. CHAFFIN, Plaintiff,**

v.

**TEXTRON, INC., and Does
1–20, Defendants.**

**No. Civ. S–93–1587–WBS/JFM.**

United States District Court,
E.D. California.

Aug. 30, 1994.

---

James Richard Martin, Sacramento, CA, for plaintiff.

Lynn D. Lieber, Fisher and Phillips, Redwood City, CA, for defendants.

### MEMORANDUM AND ORDER

SHUBB, District Judge.

In April 1993, plaintiff Kenneth Chaffin, a 63 year-old male, was laid off by his employer, Homelite, a division of defendant Textron, Inc. He was replaced by Kathleen Hall, a 39 year-old female.

After his termination, Chaffin brought this action against Textron. His complaint contains four causes of action, one of which alleges that his termination violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Before the court is Textron's motion for summary judgment on Chaffin's ADEA cause of action.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 1993, Chaffin filed his complaint in Sacramento County Superior Court. On October 4, 1993, Textron removed the action to this court under 28 U.S.C. §§ 1441 and 1446. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

The following facts are not disputed. In January 1985 Chaffin was hired by Homelite as the manager of the company's Sacramento Distribution Center ("SDC"). He was 55 years-old at the time. As the SDC manager, he was responsible for the overall operations of the facility.

At the time Chaffin was hired in 1985, Kathleen Hall was employed in the SDC warehouse. Hall was hired by Homelite to work in the warehouse in July 1979. In 1989, Hall was promoted to the position of warehouse manager, where she worked directly under Chaffin's supervision.

In early 1993, Homelite's Director of Operations Resources, Michael Baxter, decided to eliminate one of the two management positions at the SDC—which would require the company to discharge either Chaffin or Hall. According to Baxter, he reviewed Chaffin's and Hall's three most recent performance appraisals and found them to be relatively equal, "with Hall having slightly higher ratings." Baxter Decl. ¶ 3. He discussed the impending decision with James Kelbaugh who, as Homelite's Director of Distribution in early 1993, knew both Chaffin and Hall and was familiar with the SDC operation. Baxter Decl. ¶ 4; Kelbaugh Decl. ¶¶ 1, 5. Kelbaugh and Baxter concluded that Hall "was a very competent warehouse manager and had a much better grasp of the specific details of the Sacramento warehouse than did Chaffin," Kelbaugh Decl. ¶ 5, and that "Hall was actually running the warehouse facility and had an intimate familiarity with its operation," Baxter Decl. ¶ 4.

Baxter tentatively decided to retain Hall based on her familiarity with warehouse operations and on her longer tenure with Homelite. Baxter Decl. ¶ 6. Concerned because both Chaffin and Hall were employees protected by state and federal anti-discrimination statutes, Baxter reviewed his analysis and conclusion with Larry Earwood, Homelite's Vice President of Human Resources who, in turn, consulted legal counsel. Earwood Decl. ¶¶ 4–5. Earwood approved Baxter's decision to terminate Chaffin. *Id.*

In April 1993, Chaffin was terminated and Hall was placed in charge of the SDC. Chaffin did not request and was not offered a transfer within the company. The decision was communicated to Chaffin by Jon Grant, Chaffin's immediate supervisor, and John Lawing, from the Homelite human resources department, on April 16.

## II. SUMMARY JUDGMENT IN ADEA CASES

The ADEA, 29 U.S.C. § 623(a)(1), provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Chaffin contends that this section of the ADEA was violated when he was discharged by Homelite.

Summary judgment is appropriate when there are no genuine issues of material fact

and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it is necessary in the proof or the defense of a cause of action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id.* In considering summary judgment, the court does not weigh the evidence or assess its credibility, but only determines whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510.

The standards the court must apply in ruling on a motion for summary judgment in an ADEA case are the same as those in a motion under Title VII of the Civil Rights Act of 1964. As at trial,

"a plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory."

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994) (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir.1985), as amended 784 F.2d 1407 (1986)).

■ Very little proof is needed to establish a *prima facie* case. *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987), *cert. denied*, 498 U.S. 939, 111 S.Ct. 345, 112 L.Ed.2d 309 (1990). "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.'" *Wallis*, 26 F.3d at 889 (quoting *Lowe*, 775 F.2d at 1005). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ If the plaintiff makes a *prima facie* case, the burden shifts to the defendant, "who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." *Wallis*, 26 F.3d at 889. If the defendant is able to offer a legitimate, nondiscriminatory reason for its action, the presumption of discrimination created by the plaintiff's *prima facie* case "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

■ The burden then shifts back to the plaintiff. In response to the defendant's proffered nondiscriminatory reason, the plaintiff "must produce 'specific, substantial evidence of pretext.'" *Wallis*, 26 F.3d at 890 (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983)). "A plaintiff can show pretext in two ways, 'either [1] directly by persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir.1987) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). "[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption." *Wallis*, 26 F.3d at 890–91.

■ Ultimately,

as in any other summary judgment situation, the question can only be answered in each case by a review of the actual evidence offered by each party, to see whether a genuine issue of material fact has been presented for trial. If a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate.

*Id.* at 889.

## III. ANALYSIS

### A. Chaffin's Prima Facie Case

■ Textron expressly concedes that Chaffin has made a *prima facie* case of age

discrimination.[1] Chaffin, therefore, is entitled to a presumption of discrimination, and the burden shifts to Textron to articulate a legitimate, non-discriminatory reason for Chaffin's termination.

## B. Textron's Legitimate, Non–Discriminatory Reasons

■ As discussed above, the evidence shows that Homelite's management concluded that only one manager was needed at the SDC. Thus, either Chaffin or Hall had to be dismissed. The remaining management position consisted primarily of managing the warehouse operation. Baxter, the Homelite executive charged with the decision, asserts that he chose Hall for two reasons: (1) her greater seniority with Homelite, and (2) her more extensive experience in the SDC warehouse. These reasons are legitimate and nondiscriminatory. *Cf. Steckl,* 703 F.2d at 393 (finding employer's decision to promote based on relative expertise and experience of employees was legitimate). Textron, therefore, has carried its burden of showing a legitimate, nondiscriminatory reason for dismissing Chaffin.

## C. Chaffin's Showing of Pretext

■ The presumption of discrimination created by Chaffin's *prima facie* case having disappeared, resolution of the summary judgment motion comes down to whether Chaffin has adduced "specific, substantial evidence of pretext." *Id.*

### 1. Chaffin's specific arguments.

Chaffin points to six specific "facts" which, he argues, show that Textron's offered reasons are pretextual.

a. *Baxter did not have enough information to make a decision on the grounds he claimed.*

Chaffin argues that Baxter did not have sufficient information to make an informed decision, and, therefore, the statement that

Hall was better suited to manage the warehouse is pretext. Specifically, Chaffin points out that Baxter did not personally meet either manager, Baxter did not read or consider their then-current job descriptions, and Baxter did not discuss Chaffin's job performance with Chaffin's supervisor.

This argument does not respond to the precise reasons offered by Textron. Baxter chose Hall in part because he believed that she was more familiar with the operation of the warehouse than Chaffin was. Baxter Decl. ¶ 6. Hall had worked in SDC warehouse for almost fourteen years when the decision was made to promote her and fire Chaffin. From 1979 to 1989, she was employed in the warehouse in various capacities. Hall Dep. 6:22–7:16. In 1989 she was promoted to warehouse manager. Hall Dep. 6:16–18.

Chaffin was the SDC manager for eight years. He has testified that he was responsible for "the overall operations of the facility in training, security, personnel, budgets, the overall running of the facility itself." Chaffin Dep. 6:21–24; Kelbaugh Dep. 18:23–25. Chaffin estimates that he spent approximately fifty percent of his time working in the SDC warehouse and fifty percent of his time in the office. Chaffin Dep. 37:1–6. Chaffin has over twenty-five years experience as a warehouse manager. Chaffin Dep. 48:3–56:25.

Chaffin's evidence indicates that he may have had more experience than Hall in general warehouse management. That evidence, however, is not responsive to Textron's offered explanation and does not show that it is pretextual. Hall's high degree of familiarity with the warehouse is not disputed by Chaffin. Hall worked in the warehouse for fourteen years, four as warehouse manager. Chaffin, in contrast, worked at the SDC for only eight years and spent roughly fifty percent of his time outside of the warehouse.

---

**1.** To establish a *prima facie* case of age discrimination, the plaintiff must show that he was
(1) a member of a protected class [age 40–70];
(2) performing his job in a satisfactory manner;
(3) discharged; and
(4) replaced by a substantially younger employee with equal or inferior qualifications. *Wallis,* 26 F.3d at 891.

Whether Baxter made the correct, or even the most logical decision is not at issue. *See Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991) (court does " 'not sit as super-personnel department that reexamines an entity's business decisions' ") (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)). "The question," the Ninth Circuit has written, "is not whether [the plaintiff/employee] in the abstract had better qualifications than the other candidates. The question is whether the other candidates are more qualified *with respect to the criteria that [the defendant/employer] actually employs." Cotton,* 812 F.2d at 1249 (emphasis added). Using experience in the SDC warehouse as a criterion for making his decision, Baxter concluded that Hall was the appropriate choice. Chaffin's evidence does not create a dispute as to this fact.

b. *Baxter's decision violated Homelite's layoff policy.*

Textron contends that in favoring Hall because of her seniority with Homelite, Baxter believed he was following company policy. Chaffin argues that Baxter did not know the company policy and that the policy, in fact, did not operate in Hall's favor.

Homelite's policy regarding the layoff of salaried employees provided in part:

Those employees in classifications which have surplus personnel shall be reviewed for skill, ability, proficiency, attitude, attendance, and length of service. *Where all other aspects are essentially the same, length of service shall determine which employees shall be retained in the classification.*

*See* Cope Decl.Exh. B. Chaffin argues that he and Hall were not in the same classification, and that length of service was therefore not an appropriate factor for Baxter to consider.

Chaffin's argument does not show pretext. First, it appears that his interpretation of the word "classification" is not correct. Chaffin believes that he and Hall were in different employee "classifications" because he was the SDC manager and she was the SDC warehouse manager. The Homelite Salaried Employee Handbook, however, provides that all salaried employees are "classified" as either "exempt" or "non-exempt". Cope Decl.Exh. A. Both Hall and Chaffin were classified as exempt supervisory employees, hence came within the same "classification".

Second, even if Chaffin's interpretation of the policy is correct, Baxter testified that he believed it was generally company policy to favor, when all other considerations are equal, employees with greater seniority in the company. Baxter Dep. 21:6–10. Baxter admitted that he had never seen the policy in writing, but that he believed he was following an established policy when he retained Hall over Chaffin. Baxter Dep. 23:20–24:9. He asserted that in "most of the cases" in which he decided whether to terminate an employee, he took seniority into account. Baxter Dep. 23:5–7.

Chaffin points to no evidence that draws into question Baxter's belief that he understood and was following an established company policy. Even if Baxter's understanding of the policy was incorrect, his decision to consider Hall's seniority was legitimate and nondiscriminatory.

c. *Baxter's decision was not consistent with Homelite's practice and history in other comparable layoffs involving younger employees.*

The evidence shows that, with one exception, when Homelite had consolidated the management of other regional distribution centers, the distribution manager, rather than the warehouse manager, was retained. *See* Kelbaugh Dep. 95:2–96:8. Chaffin also points out that when another distribution center was closed, one of the affected distribution center managers was considered for another position with the company. *See* Kelbaugh Dep. 96:9—97:7; Earwood Decl. ¶ 7 (only one manager of a closed distribution center was actually transferred, and he was 59 years-old).

These facts, even if established at trial, would not call into question the reasons articulated by Baxter in support of his decision to layoff Chaffin instead of Hall. The record

contains no evidence regarding the experience or seniority of the managers stationed at other Homelite distribution centers. There is no showing that in those other instances the retained distribution center manager did not have more experience in the warehouse and more seniority with Homelite than the warehouse manager who was discharged or transferred. In the absence of specific information regarding the seniority and experience of the managers of the other distribution centers, this argument does not reveal pretext.

d. *When he was informed of his termination Chaffin was given a reason different than that now offered by Textron.*

Chaffin states that initially he was told that he was terminated because unemployment would be more difficult financially for Hall than it would be for him. Specifically, on April 16, 1993, Lawing and Grant allegedly told him "we know that you're military and have a retirement and that she's a single mother with a child, and that you would have a better financial arrangement if your position was—or you was the one that was terminated." Chaffin Dep. 85:4–8, 194:17–24. Textron denies that this statement was made.

For four reasons, the court finds that the statement, if made, does not show Textron's proffered reasons to be pretextual. First, Chaffin attributes the statement to Grant and Lawing. Neither of these men were involved in the decision to terminate Chaffin—they were merely the bearers of the news. Grant Decl. ¶ 2. Second, there is no evidence that Baxter, the decision-maker, knew of or considered the relative financial status of Chaffin and Hall. In fact, Baxter states that he had no knowledge of the two employees' financial situations. Baxter Decl. ¶ 3. Third, Chaffin admits that Grant told him that Hall's greater experience and seniority motivated Baxter's decision. Chaffin Dep. 196:19—197:3. Finally, the statement appears to have been directed at Chaffin's financial condition rather than his age. In *Wheeldon v. Monon Corp.*, 946 F.2d 533, 536 (7th Cir.1991), the court held that although

consideration of "an economic factor closely related to age may constitute impermissible age-based discrimination," military pensions are not necessarily a proxy for age. Military pensions, the court observed, are based solely on years of service, not on a combination of age and years of service. *Id.* If made, the comment appears to have been motivated only by an attempt to rationalize the employment decision already made, rather than by age-based animus.

e. *The only documentation of the selection process consists of Chaffin's own notes.*

Chaffin appears to argue that Textron's reasons are not legitimate because it cannot produce written documentation regarding its decision-making process. Textron's burden is to articulate legitimate reasons which formed the basis for its decision. The court will not infer from lack of documentation that Textron is fabricating reasons for Chaffin's termination. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990) (finding that employer's failure to immediately memorialize reasons for employment decision does not undermine the validity of the reasons).

f. *Chaffin was not offered a transfer within the company.*

Chaffin argues that Baxter's reasons for terminating him are undermined by the fact that he was not offered a transfer within the company. Chaffin points out that Homelite's layoff policy stated:

> Where individuals are displaced who have greater service than others in lower classifications who have not been displaced, and they have proven ability to meet the requirements for work in the lower classification, they may be considered for reduction to the lower classification and assignment to work of classification to avoid layoff.

Cope Decl.Exh. B. Chaffin contends that other, younger, employees at the SDC had less seniority. He argues that he had the proven ability to work in the positions held by these employees and should have been offered a position held by one of them.

Although the fact that employees with less seniority occupied low-ranking positions at the SDC is not disputed by Textron, it does not show pretext. First, it is undisputed that Chaffin never requested a transfer or reassignment. Second, there were no vacant jobs in the SDC; to accommodate Chaffin, Homelite would have had to fire another SDC employee. Finally, the language of the policy is discretionary. It specifically provides that senior employees "*may be considered* for reduction to the lower classification." Textron explains that the company would not have demoted Chaffin to a low-paying position in the warehouse because he would have been placed in a position below Hall, which might have caused problems with employee morale and productivity. *Cf. Woody v. St. Clair County Comm'n,* 885 F.2d 1557, 1561 (11th Cir.1989) (finding that overqualification was legitimate reason for not hiring applicant). Chaffin provides no evidence that suggests this is not a valid concern for an employer.

## 2. Chaffin has failed to carry his burden.

Chaffin has not adduced "specific, substantial evidence of pretext." His basic argument is that Baxter's decision was wrong for business reasons. He points to no evidence from which a jury could infer that he was the victim of age-based discrimination.

After considering all of Chaffin's evidence, it is undisputed that: (1) the management position remaining at SDC consisted primarily of running the warehouse; (2) Hall was the warehouse manager and was more familiar with the day-to-day operations of the warehouse; and (3) Hall had been employed by Homelite longer than Chaffin.

The evidence also shows that Homelite dealt with a difficult situation thoroughly and fairly. Baxter was aware that the two employees affected by the reduction in SDC management were members of different classes protected by federal and state employment discrimination laws. In a similar case, *Varcato v. Sundstrand Corp.,* No. 91 C 20375, 1994 WL 174179 (N.D.Ill. May 6, 1994), Judge Reinhard[2] made this observation:

[T]he court must note that this case seems to exemplify the expression "caught between a rock and a hard place" in the context of workplace discrimination. As defendant points out, it took substantial steps to ensure that its decision as to whom to lay off was done for business reasons only. Yet, when it boiled down to which employee to lay off, defendant was left with a seeming Hobson's choice: should it run the risk of an age discrimination lawsuit or a sex discrimination lawsuit. Left with this unenviable choice, defendant made a decision after an elaborate review procedure. Inevitably, of course, one person would prove to be unhappy. The law places, as it should, the burden on the employer not to discriminate. It would be wrong, however, to penalize an employer who, in making every effort to comply with the law, objectively chooses one employee to lay off rather than another. The law in this context is designed to preserve equality of status. It is not intended to insure everyone a position in the workplace.

*Id.* at *7.

With no direct evidence of discrimination and no evidence that Textron's proffered reasons are pretextual, Chaffin is left only with a rudimentary *prima facie* case of age-based discrimination. Because this alone is not sufficient to survive summary judgment, *see Wallis,* 26 F.3d at 890, Textron's motion will be granted.

## D. Chaffin's Remaining State Law Claims

Chaffin's remaining claims arise under state law. Specifically, his complaint includes causes of action under Cal. Gov't Code §§ 19240(a) and 12941, under Cal.Lab. Code §§ 201, 203, and 208, and for breach of contract.

■ Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction." The deci-

---

**2.** District Judge Philip G. Reinhard of the Northern District of Illinois.

sion to remand state law claims rests in the discretion of the district court. *Imagineering, Inc. v. Kiewit Pacific Corp.*, 976 F.2d 1303, 1309 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).

When Textron removed the action to this court, the court had original jurisdiction over Chaffin's ADEA claim pursuant to 28 U.S.C. § 1331. Because the court will dismiss the ADEA claim, Chaffin's remaining state law causes of action will be remanded to state court. *Cf. Hameditoloui v. Law Offices of Stephen M. Kass,* No. C–92 4570 MHP, 1993 WL 553604, at *2–3 (N.D.Cal. Dec. 29, 1993) (remanding state law claims after dismissing federal Title VII cause of action). See generally *Imagineering,* 976 F.2d at 1309, and *Schneider v. TRW, Inc.,* 938 F.2d 986, 995–98 (9th Cir.1991) (O'Scannlain, J., dissenting), for discussions of when district court should exercise its discretion to remand state law claims after federal claims are dismissed.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment on plaintiff's ADEA claim be, and the same is, hereby GRANTED.

IT IS FURTHER ORDERED that the action on plaintiff's remaining claims be, and the same is, hereby REMANDED to the Superior Court of California in and for the County of Sacramento.