**Erle E. PEACOCK, Jr.,
Plaintiff-Appellant,**

v.

**Merlin K. DUVAL, et al.,
Defendants-Appellees.**

**No. 81–5291.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1982.

Decided Dec. 14, 1982.

---

William Lee McLane, McLane & McLane, Phoenix, Ariz., for plaintiff-appellant.

William R. Jones, Jr., Phoenix, Ariz., for defendants-appellees.

Before FLETCHER, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Dr. Erle E. Peacock, Jr. appeals from a summary judgment entered in favor of all defendants. Because Peacock's claims raise genuine issues of material fact, we reverse the summary judgment and remand for trial.

From 1969 until late 1973, Peacock was a tenured Professor of Surgery and Head of the Department of Surgery at the University of Arizona's College of Medicine, a state institution. However, for reasons that remain in dispute, relations between Peacock and the college administration eventually soured. Peacock was summarily dismissed as Head of the Department on October 25, 1973 and was suspended as Professor of Surgery on February 11, 1974. Peacock filed suit in the United States District Court for the District of Arizona on February 22, 1974, alleging that the dismissal and suspension, without prior hearings, violated his fourteenth amendment due process and first amendment freedom of speech rights.[1] Peacock was awarded damages of $470,000 by a trial jury, but the district court overturned this verdict as excessive and ordered a new trial. In addition, the trial judge granted summary judgment for all defendants on Peacock's fourteenth amendment due process counts. In *Peacock v. Board of Regents*, 597 F.2d 163 (9th Cir.1979) we affirmed the district court's decisions, dismissed all claims as to certain defendants, and remanded for a new trial on Peacock's first amendment causes of action. Instead of conducting a trial, however, the district court granted summary judgment in favor of all remaining defendants on the first amendment counts. It is from this order that Peacock now appeals.

Summary judgment is proper only if there are no disputed genuine issues of material fact. Fed.R.Civ.P. 56(c); *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 882 (9th Cir.1980). In reviewing a summary judgment, we must view the evidence in a manner most favorable to the appellant. *Gaines v. Haughton*, 645 F.2d 761, 769 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).

Viewing the evidence in that light, we find that serious questions of constitutional dimension have yet to be resolved. The principal issue before us is whether Peacock was dismissed and suspended because he exercised protected first amendment rights. To prevail, Peacock must show that his activities were constitutionally protected and that the activities constituted a motivating factor in the decisions to dismiss and suspend. If these two requirements are satisfied, defendants must demonstrate by a preponderance of the evidence that the same employment decisions would have been reached even if Peacock had not engaged in constitutionally protected conduct. *Mt. Healthy School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Nicholson v. Board of Education Torrance Unified School District*, 682 F.2d 858 (9th Cir. 1982); *Wagle v. Murray*, 560 F.2d 401, 402

---

[1]. Peacock sought injunctive relief to restore both of his former positions. Following a hearing, the district court ordered the University to reinstate Peacock as Head of Surgery. The court gave the University the option of relieving Peacock, once reinstated, pending a hearing. The court also denied Peacock's motion to be reinstated as Professor of Surgery.

The University reinstated Peacock as Head of Surgery but immediately relieved him of his duties pending an Academic Committee hearing. The Committee subsequently recommended that Peacock's dismissal as Head of Surgery be made permanent but that he be reinstated as Professor of Surgery. The University followed both recommendations and reinstated Peacock as Professor of Surgery but not as Head of Surgery.

(9th Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978).

■ As a result, Peacock's first amendment causes of action necessarily involve complicated questions of motive and intent. A fair resolution of these difficult issues requires a full trial on the merits. Indeed, we have recently reiterated that "the decision as to an employer's true motivation plainly is one reserved to the trier of fact." *Nicholson,* 682 F.2d at 864. *See also Mt. Healthy,* 429 U.S. at 286, 97 S.Ct. at 575; *Wagle v. Murray,* 560 F.2d 401, 403 (9th Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978). For this reason, courts have traditionally held that summary judgment is inappropriate when "questions of motive predominate in the inquiry about how big a role the protected behavior played in" the employment decision. *Mabey v. Reagan,* 537 F.2d 1036, 1045 (9th Cir.1976). *See also Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1220 (9th Cir. 1980), (citing *Calnetics Corp. v. Volkswagen of America, Inc.,* 532 F.2d 674, 683–84 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976)). Without a searching inquiry into these motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of *post hoc* rationalizations.

The existing record does not resolve the most important material issues of genuine fact. When the district court granted summary judgment for defendants on the fourteenth amendment issues in June 1976, it refused to grant summary judgment with respect to Peacock's first amendment claims. The court held that

> summary disposition is generally inapposite for First Amendment questions. . . . [T]his Court finds that there is a genuine issue of material fact as to whether plaintiff was dismissed as Department Head

or suspended as Professor of Surgery in retaliation for speech protected by the First Amendment. Therefore, summary judgment on the First Amendment claims is denied.

*Order Granting Partial Summary Judgment* at 10 (June 28, 1976).

A review of the record convinces us that the district court's 1976 finding that genuine issues of material fact existed is still valid. No additional facts were placed before the district judge following his 1976 denial of summary judgment on the first amendment issues.[2] Nonetheless, defendants argue that the intervening decision in *Mt. Healthy* required the district court to reverse its position on the summary judgment question. We disagree. *Mt. Healthy* requires only that a plaintiff's constitutionally protected behavior be "a motivating factor" in the employment decision and that the same employment decision would not have been reached in the absence of such behavior. 429 U.S. at 287, 97 S.Ct. at 576 (citing *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270–71, n. 21, 97 S.Ct. 555, 566, n. 21, 50 L.Ed.2d 450 (1977)). *See also Nicholson,* 682 F.2d 858; *Correa v. Nampa School Dist. No. 131,* 645 F.2d 814, 817 (9th Cir.1981). Viewing the record in light of the *Mt. Healthy* test, we find that Peacock's claims cannot be resolved by summary judgment.

There is little or no disagreement with regard to the following facts. Peacock vigorously opposed changes in the system for allocating funds received for professional services rendered by the college's clinical departments. Members of the Department of Surgery asked Peacock to communicate to the college administration their concerns about the proposed changes. Peacock's subsequent arguments to the administration dealt at least in part with the way in which medical education at the public university

---

**2.** In its 1980 order granting summary judgment on the first amendment issues, the district court does not refer to any new factual evidence developed since its 1976 decision. Indeed, the court relies entirely on the record developed for Peacock's 1974 trial. *See, e.g., Order Granting Summary Judgment* at 6 (No-

vember 5, 1980) ("The court is intimately familiar with the facts and allegations of this case, having already presided over a trial on the merits . . . . [T]he record demonstrates nothing more than a power struggle between Dr. Peacock and the defendants."). *See also id.* at 13.

should be funded and administered. Following these activities on his part, Peacock was asked to resign as Head of the Department of Surgery. When Peacock refused to tender his resignation, he was dismissed as Department Head.

In response to the controversy surrounding Peacock's dismissal, the University President made a public statement and issued a press release. These statements defended the University's decision to dismiss Peacock. In response, Peacock made a public statement challenging the propriety of the University's refusal to allow the faculty to select a Department Head and criticizing the President's failure to specify reasons for his dismissal. When a recently arrived retired army officer was installed as the new Head of the Department of Surgery, one of his first acts was to recommend, in a letter to the President of the University, that Peacock be suspended from his tenured professorship. The letter contained three justifications for Peacock's suspension. The third reason—the only one that need concern us here—was that Peacock's public statements to the press in response to the University President were falsely critical of members of the University community. Two days after he received the letter, the University President suspended Peacock.[3]

These facts could lead a jury to conclude that Peacock's first amendment rights were violated. Indeed, a jury could find a constitutionally impermissible motive on the very face of the college administration's

stated reasons for suspension. Where the employer's explicit justifications for dismissal arguably implicate constitutionally protected rights, summary judgment is particularly inappropriate. *See Mabey v. Reagan,* 537 F.2d 1036, 1044 n. 9 (9th Cir. 1976), (summary judgment is improper when "at least one of the stated reasons for dismissal is arguably eligible for First Amendment protection.").

Although we recognize the necessity for the efficient functioning of a public university, *Peacock v. Board of Regents,* 597 F.2d 163, 165 (9th Cir.1979), such efficiency cannot be purchased at the expense of stifling free and unhindered debate on fundamental educational issues. Merely because Peacock's speech may have had the effect of irritating or even harassing the University's administration does not mean that such speech is stripped of its first amendment protection. *See, e.g., Bernasconi v. Tempe Elementary School Dist. No. 3,* 548 F.2d 857, 862 (9th Cir.), *cert. denied,* 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 82 (1977); *Mabey v. Reagan,* 537 F.2d 1036, 1047, 1050 (9th Cir.1976); *Adamian v. Jacobsen,* 523 F.2d 929, 934 (9th Cir.1975). Nor is the fact that some of Peacock's speech may have been "falsely critical" sufficient, in itself, to warrant stripping it of that protection. *See Pickering v. Board of Education,* 391 U.S. 563, 570–75, 88 S.Ct. 1731, 1735–38, 20 L.Ed.2d 811 (1968).

We disagree completely with the district court's conclusion that "nothing said or

---

**3.** Defendants argue that the University President did not necessarily sanction the letter's justifications for suspending Peacock. Although this might conceivably be true, there remains a significant dispute about the President's actual motivations. Moreover, it is reasonable to presume that recommendations from department heads are usually of paramount importance. *See, e.g., Bertot v. School Dist. No. 1, Albany County, Wyoming,* 522 F.2d 1171, 1181 (10th Cir.1975) ("The recommendation to the Personnel Committee, its recommendation to the Board, and the Board's reasons for non-renewal of her contract are of critical importance in deciding whether the action adverse to her was for the exercise of her constitutional rights."). *See also Haimowitz v. University of Nevada,* 579 F.2d 526, 530 (9th

Cir.1978); *Smith v. Losee,* 485 F.2d 334, 336–40 (10th Cir.1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974). Consequently, if those who recommended dismissal did so for constitutionally impermissible reasons, the University President's assertion that he acted for completely different reasons does not answer the question of his motivation for purposes of summary judgment. At most, his assertion raises a question for the jury.

The two additional justifications given in the letter are comparatively minor in nature and do not implicate any constitutional concern. The parties are apparently in agreement that they were not the reason for the President's action. Accordingly, they are of no consequence for most purposes relating to the litigation.

done by Dr. Peacock could be construed as speech directed towards issues of public concern." *Order Granting Summary Judgment* at 6 (November 5, 1980). There is no factual dispute as to the content of Peacock's speech, nor can there be any doubt that much of that speech dealt with subjects of public importance. Because at least some of Peacock's words and writings concern questions of policy relating to the administration of a public medical school, his speech clearly transcends mere academic bickering.[4] *See, e.g., Pickering v. Board of Education,* 391 U.S. 563, 571–72, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968); *Chitwood v. Feaster,* 468 F.2d 359, 361 (4th Cir.1972).

Defendants remain free, at time of trial, to present their factual evidence and arguments regarding the reasons for Peacock's suspension and dismissal. The record before us, however, presents genuine issues of material fact regarding defendants' motives for suspending and dismissing Peacock. These issues may not properly be resolved on summary judgment. *See, e.g., Lutcher v. Musicians Local 47,* 633 F.2d 880, 885 (9th Cir.1980).

It will always be possible for employers to advance after-the-fact rationalizations for dismissals in response to the exercise of constitutional rights. Summary judgment in cases such as these would mean that many instances of retaliatory firings might never reach the jury. Only a full trial can separate permissible motivations from those that merely hide unconstitutional behavior. The order of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

4. Our conclusion does not necessarily foreclose other contentions that the University might advance. For instance, the University could argue that Peacock was unable to function as Head of Surgery because his behavior disrupted "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Pickering,* 391 U.S. at 570, 88 S.Ct. at 1735. We express no view on whether the relationship of Head of Department to University Administration is the type of relationship alluded to in *Pickering,* or whether Peacock's conduct could in any event be said to impair his "proper functioning." Summary judgment is not the time to arrive at a final answer to such questions. We must remember, however, that "unrealistic sensitivity to the fragility of schools and universities is inappropriate. Robust intellectual and political discussions can and should thrive on college campuses." *Mabey,* 537 F.2d at 1050.