William VASQUEZ, Plaintiff,

v.

CITY OF BELL GARDENS, a municipal corporation; Rodolfo Garcia, city councilperson; Frank Duran, city councilperson; and Rosa Hernandez, city councilperson, Defendants.

No. CV–94–1595 KMW (GHKx).

United States District Court, C.D. California.

Aug. 7, 1996.

Kimiyo T. Endo, Pension Benefit Guaranty Corporation, Washington, DC, Gwendolyn Gamble, United States Attorney Office, Los Angeles, CA, for plaintiff Pension Benefit Guaranty Corporation.

Andrew R. McCorkle, Reish & Luftman, Washington, DC, Joseph C. Faucher, Los Angeles, CA, for defendants Carter and Tillery Enterprises, et al.

Kenneth M. Miller, Silver, Shaeffer & Hadden, Santa Ana, CA, for plaintiff William Vasquez.

Lee A. Wood, Thomas E. Francis, Lewis, D'Amato, Brisbois & Bisgaard, LLP, Costa Mesa, CA, J. Arnold Beltran, Beltran & Leal, Los Angeles, CA, for defendants City of Bell Gardens, et al.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WARDLAW, District Judge.

The Court has considered the Motion for Summary Judgment/Determination as to Whether Plaintiff's Proffered Activities Constitute "Protected Speech," filed by defendants on July 2, 1996, and has reviewed all the material filed by the parties in connection with the Motion. Based upon all briefs, exhibits, declarations, and other evidence submitted by the parties, the oral argument of counsel, as well as all files and records in this case, the Court hereby DENIES defendants'

Motion for Summary Judgment in its entirety.

## I. INTRODUCTION

Plaintiff William Vasquez claims that he was terminated from his position as city manager of defendant City of Bell Gardens ("the City") in retaliation for exercising his First Amendment rights. Specifically, Plaintiff asserts that a majority of the city council voted to terminate his contract because of his allegations of criminal wrongdoing and abuses of power by certain city councilpersons. The Court concludes that Plaintiff has identified numerous instances of speech which substantially relate to matters of inherent public concern. According to the United States Supreme Court, such speech is the "essence of self-government," and therefore occupies the "highest rung of the hierarchy of First Amendment values." *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). Because defendants have failed to carry their burden of justifying Plaintiff's discharge, their motion for summary judgment must be denied in its entirety.

## II. BACKGROUND

On May 1, 1992, Plaintiff was appointed to the position of city manager for the City. Under the City's municipal code, the city manager acts as "the administrative head of the city government under the direction and control of the city council." Municipal Code § 2.08.080. Among the city manager's powers and duties is the mandate to (1) see that the laws of the state pertaining to the city, and all laws and ordinances of the City, are duly enforced; (2) control, order, give directions to, appoint, promote, discipline, and demote or remove all heads of departments and all subordinate officers and employees of the City; and (3) exercise control over, and supervise in general, all departments and divisions of the City government and all ap-pointive officer and employees thereof. Municipal Code § 2.08.080.

Plaintiff claims that shortly after his appointment, he refused and objected to the illegal and unethical demands of the City's mayor, defendant Frank Duran ("Duran"), and city councilpersons Rodolfo Garcia ("Garcia") and Rosa Hernandez ("Hernandez") (collectively, "the individual defendants").[1] As a result, on March 13, 1993, a special meeting of the city council was convened and by a 3 to 2 vote the city council dismissed Plaintiff from his position. Complaint ¶¶ 3, 9. Garcia, Duran and Hernandez voted in favor of Plaintiff's dismissal. Memorandum, Ex. 14.

On March 11, 1994, Plaintiff filed a complaint for damages against the City and the individual defendants. The complaint alleges causes of action for violation of civil rights, 42 U.S.C. § 1983, and for wrongful termination in violation of the California Political Reform Act of 1974, Cal.Government Code §§ 87100, *et seq.*[2]

On June 16, 1995, defendants filed a motion for summary judgment on the grounds that, *inter alia*, Plaintiff had failed to allege or establish that he was terminated as a direct result of the exercise of his First Amendment rights, and that defendants were entitled to complete and/or qualified immunity for their decision to terminate Plaintiff. The motion was denied on July 24, 1995.

On March 18, 1996, the Court considered eleven motions *in limine* filed by defendants and two motions *in limine* filed by Plaintiff. The Court granted defendants' third motion (re: Duran's request for stop sign) and granted in part and denied in part defendants' first motion (re: allegations involving the misuse by council member Hernandez of her city issued badge). The other motions *in limine* were denied. The Court further ordered Plaintiff to file a pretrial statement setting forth the specific speech which he claims was protected and which led to his

---

1. Although the Complaint alleges that Duran was a city councilperson, at some point he became the City's mayor. *See* Duran Decl. ¶ 6.

2. By order dated May 23, 1994, the Court dismissed Plaintiff's second claim for relief without prejudice. The Court declined to exercise its supplemental jurisdiction over the second claim because it raised "novel and complex issue[s] of State law." 28 U.S.C. § 1367(c)(1).

termination in violation of the First Amendment.[3]

On July 2, 1996, defendants filed a second motion for summary judgment.[4] Defendants contend that the speech identified by Plaintiff is not protected by the First Amendment. This motion is now before the Court.

## III. ANALYSIS

### A. Legal Standard on Motion for Summary Judgment.

 It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

 If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2553. "Instead, . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings . . . [T]he adverse party's response . . . must set forth *specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. at 2510; *Griffeth v. Utah Power & Light Co.,* 226 F.2d 661, 669 (9th Cir.1955).

### B. Defendants' Motion for Summary Judgment Must Be Denied.

#### 1. Legal Principles Governing the Exercise of First Amendment Rights by Public Employees.

 The statute under which Plaintiff's claim is brought, 42 U.S.C. § 1983, is not a source of substantive rights, but provides a means for vindicating federal rights else-

---

**3.** Also, on March 18, 1996, the Court ordered defendants to file a motion for summary judgment not later than May 3, 1996.

**4.** Defendants not only filed the instant motion well after the deadline set by the Court, but they also filed a 38 page memorandum of points and authorities in violation of local rules and the Court's standing order. Defendants are hereby warned that papers filed in violation of this Court's rules will not be considered by the Court, and sanctions may be imposed in the future.

where conferred. *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979). A violation of section 1983 may occur when an employee is retaliated against for speech protected by the First Amendment. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1983).

■■■■■ "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). "[I]t is apparent that the threat of dismissal from public employment is ... a potent means of inhibiting speech." *Pickering v. Board of Education of Township High School District,* 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968). Accordingly, a public employer may not terminate an employee in violation of his First Amendment rights. *Id.* A public employee's First Amendment rights are violated if his employer takes an adverse employment action against the employee because of that employee's protected speech, even if the employee was terminable at will. *Mt. Healthy,* 429 U.S. at 283, 97 S.Ct. at 574.

■■■■■ In order to prevail on his First Amendment claim, a plaintiff "must initially prove that his speech was constitutionally protected," *i.e.* that his statements "substantially involved matters of public concern." *Johnson v. Multnomah County,* 48 F.3d 420, 422 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2616, 132 L.Ed.2d 858 (1995); *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689. Speech involves a matter of public concern when it can fairly be considered to relate to "any matter of political, social, or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1690; *Johnson,* 48 F.3d at 422. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690. For speech to be of public

concern it need not be communicated publicly. *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (freedom of speech not "lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public").

■■■■■ In making its determination, the Court must "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35. The State's burden in justifying a particular discharge varies depending upon the nature of the employee's expression. *Connick,* 461 U.S. at 150, 103 S.Ct. at 1691. "[A] stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." *Id.* at 152, 103 S.Ct. at 1692–93. Moreover, a public employer has "no legitimate interest in covering up mismanagement or corruption." *Johnson,* 48 F.3d at 427.

■■■■■ Once the court determines that the speech is protected by the First Amendment, the public employee must show that his constitutionally protected expression was a "substantial" or "motivating" factor in the employer's adverse decision or conduct. *Allen v. Scribner,* 812 F.2d 426, 433 (9th Cir.), *modified,* 828 F.2d 1445 (1987); *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. In First Amendment cases, where complicated questions of motive and intent are presented, a full trial on the merits is required. *Peacock v. Duval,* 694 F.2d 644, 646 (9th Cir.1982). According to the Ninth Circuit, summary judgment is "inappropriate when 'questions of motive predominate in the inquiry about how big a role the protected behavior played in' the employment decision." *Id.* at 646; *Allen,* 812 F.2d at 436.

### 2. Plaintiff Has Identified Numerous Instances of Constitutionally Protected Speech.

In his supplemental pretrial statement, Plaintiff has identified numerous instances of

constitutionally protected speech and has provided substantial evidence in support of his position. The Court will address Plaintiff's contentions below.

a. **Speech in Response to Defendant Garcia's Demands that Plaintiff Fire the "White Guy" in Charge of the City Hall Renovation Project, and Hire Alfred Lazoya, a Local Hispanic Contractor.**

 Plaintiff contends that in July and August of 1992, Garcia ordered him to fire the "white guy" in charge of the City Hall renovation project, and hire Alfredo Lazoya, a local Hispanic contractor. Garcia later allegedly demanded that Lazoya be awarded a sub-contract on the renovation project, even though Lazoya's bid was substantially higher than others submitted. Pretrial Statement at 3–4.

In a series of conversations and meetings, Plaintiff claims that he informed Garcia and the city council that compliance with Garcia's request would be illegal. Plaintiff sent two confidential memoranda to the city council advising its members of Garcia's illegal demands. Subsequently, Plaintiff confirmed to a reporter for *The Los Angeles Times* that Garcia had made illegal demands regarding hirings for the City Hall renovation project. Plaintiff's Exs. 44, 57, 61, 230.

 Plaintiff's alleged speech addressed matters of public concern because it related to matters of "political, social, or other concern" to the City's residents. *See Connick,* 461 U.S. at 146, 103 S.Ct. at 1689. Specifically, Plaintiff's alleged speech involved activity by a member of the city council which would violate the Equal Protection Clause of the Fourteenth Amendment, state law regarding contractor licensing, and the municipal code's open-bid requirements. *See* Cal. Bus. & Prof.Code § 7028; Municipal Code § 3.04.070. Because this speech involved matters of public concern, it is entitled to constitutional protection. *See Voigt v. Savell,* 70 F.3d 1552, 1562 (9th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996) (allegations of criminal wrongdoing and abuse of power involve matters of inherent public concern); *Hyland v. Wonder,* 972 F.2d 1129, 1137 (9th Cir.1992)

(memorandum exposing, *inter alia*, abuses, potential civil rights violations, and incompetence of public officials addressed matters of public concern).

b. **Speech in Response to Defendant Duran's Demands that Duran's Son Be Awarded a Plastering Contract for the City Hall Renovation Project.**

 According to Plaintiff, in August 1992, defendant Duran repeatedly demanded that Plaintiff "do everything possible" to get his son the plastering contract for the City Hall renovation project. *See* Pretrial Statement at 5–6. Plaintiff allegedly refused to comply with Duran's request and informed Duran that the hiring of his son would create a conflict of interest. Plaintiff subsequently advised the city council of Duran's request, and confirmed that the request was made and that it was improper to *The Los Angeles Times. See* Plaintiff's Exs. 44, 56, 57, 61, 230.

 This alleged speech addressed a matter of public concern because it related to activity by a member of the city council which would violate state law regarding conflicts of interest and the municipal code's requirement that City contracts be awarded to the lowest bidder. *See* Cal.Gov.Code § 87100 (prohibiting public officials from using official position to influence a governmental decision in which he knows or has reason to know he has a financial interest); Municipal Code § 3.04.060. Because this speech involved matters of public concern, it is entitled to constitutional protection.

c. **Speech Regarding Defendant Duran's Illegal Interference in Administrative Matters, and His Illegal Orders Regarding the Purchase of Fence Material for Suva Elementary School.**

 Plaintiff further claims that in or around November 1992, Duran requested that Plaintiff purchase fencing material from a vendor where his relative worked even though the vendor was not the lowest bidder, and that Duran subsequently interfered with City administration by improperly contacting outside officials regarding the purchase. *See*

Pretrial Statement at 6–7. Plaintiff asked the City Attorney to render an opinion on the matter and informed the city council of Duran's improper actions. *See* Plaintiff's Exs. 16, 18.

Plaintiff's alleged speech addressed matters of public concern because it related to violations by a member of the city council of municipal code provisions pertaining to the awarding of City contracts and interfered with the duties of the city manager. *See* Municipal Code §§ 3.04.070, 2.08.080. Because this speech involved matters of public concern, it is entitled to constitutional protection.

**d. Speech Regarding Garcia's Demand that Plaintiff Terminate a City Contract with Southside Towing and Hire a Local Hispanic Towing Company.**

■■■■ Beginning in October 1992, and continuing through 1993, Plaintiff contends that defendant Garcia demanded that Plaintiff terminate the City's contract for towing service with a supposedly "white-owned" company, and hire instead a local towing company, owned by a friend of Garcia who was Hispanic. *See* Pretrial Statement at 8–9. Plaintiff disobeyed Garcia's demand and refused to recommend that the contract with the "white-owned" company be terminated. Plaintiff also objected to Garcia's demands in two confidential memoranda to the city council and confirmed Garcia's illegal request to a reporter for *The Los Angeles Times*. *See* Plaintiff's Exs. 44, 57, 61, 230.

■■■■ Plaintiff's alleged speech addressed matters of public concern because it involved violations by a member of the city council of the Equal Protection Clause of the Fourteenth Amendment, and the municipal code's procurement rules. *See* Municipal Code § 3.04.060. Because this speech involved matters of public concern, it is entitled to constitutional protection.[5]

**e. Speech Concerning Donations from the Bicycle Club, a Local Casino, to the Willie C. Velasquez Center.**

■■■■ According to Plaintiff, in or around July 1992, Garcia allegedly asked Plaintiff if he could solicit funds from the Bicycle Club, a local casino that is the City's largest source of revenue, on behalf of the Willie C. Velasquez Center, an alleged charity of which Garcia was the only paid employee and which was Garcia's primary source of income. Pretrial Statement at 9–10.

Plaintiff responded that such solicitations would create a conflict of interest. After Garcia allegedly disregarded Plaintiff's advice, and accepted contributions from the Bicycle Club, Plaintiff advised Garcia to abstain from voting on matters concerning the Bicycle Club, initiated an investigation of the matter, and informed the city council of the situation. In December 1992, Garcia voted on the matter but, after speaking with Plaintiff, changed his vote to an abstention. Plaintiff's Exs. 18, 232.

■■■■ Plaintiff's alleged speech addressed matters of public concern because it related to violations of the state law regarding conflicts of interest, as well as the municipal code's prohibition against accepting money from the Bicycle Club. *See* Cal.Gov.Code § 87100; Municipal Code § 5.25.160. Because this speech involved matters of public concern, it is entitled to constitutional protection.

**f. Speech in Response to Defendants Duran and Garcia's Demands that the City Support a Healthcare Proposal.**

■■■■ According to Plaintiff, Duran and Garcia demanded that Plaintiff support a program whereby the City would provide healthcare services both in the City and in Tijuana, Mexico for first-generation Mexican

---

5. Defendants assert that, with respect to the towing company contract, Plaintiff has "failed to identify a statement." Memorandum at 15. However, "[a] public employee who positively asserts the right not to speak when ordered to support his employer is within the protection of the first amendment." *Sykes v. McDowell*, 786 F.2d 1098, 1104 (11th Cir.1986); *see also Wooley*

*v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (First Amendment protects right to speak freely and the right to refrain from speaking at all). Thus, Plaintiff's refusal to make recommendations as requested by City officials constitutes "protected speech" under the First Amendment.

**1498**

residents. The program was to be funded by the Mexican Federal Insurance system. Pretrial Statement at 10–11.

Plaintiff repeatedly questioned the legality of the proposed program, and, in a confidential memorandum to the city council, stated that he would not recommend the program without a full investigation. Plaintiff requested that the city attorney initiate an investigation of the program and its relationship to the Mexican government. Plaintiff's Ex. 44.

■ Plaintiff's alleged speech addressed matters of public concern because it related to potential violations by City officials of state and federal anti-discrimination laws, and laws regarding the legality of the City's healthcare program. This speech is therefore entitled to constitutional protection.

**g. Speech in Connection with Defendant Hernandez' Illegal Use of Her City Council Badge.**

Plaintiff asserts he received complaints that, prior to his appointment as city manager, Hernandez had used her badge to intimidate residents of the City into not voting by absentee ballot. Plaintiff claims that he discussed these complaints with the City attorney and referred the matter to him for investigation. Pretrial Statement at 11–12.

Following the Court's ruling on defendants' motion *in limine,* Plaintiff has apparently abandoned his contention that this speech was constitutionally protected.

**h. Speech in Response to Defendant Hernandez' Demand that Plaintiff Recommend a $50,000 Grant for the Rio Hondo Boys and Girls Club.**

■ Plaintiff maintains that Hernandez requested that the City award a $50,000 grant to the Rio Hondo Boys & Girls Club ("the Club"). At the time, Hernandez was a member of the Club's Board of Directors, and her daughter was an employee of the Club. On August 13, 1992, before Hernandez' request was made, Plaintiff claims that the Club's president publicly thanked the City for the $50,000 grant. Pretrial Statement at 12–13.

Plaintiff informed Hernandez that the public announcement was inappropriate. He also suggested that the city council adopt procedures whereby grant requests would be evaluated based on merit. Finally, Plaintiff advised the city council that he would not recommend that the City award the grant to the Club unless he received additional information. Plaintiff's Exs. 46, 74.

■ Plaintiff's alleged speech addressed matters of public concern because it related to a City official's possible violation of state conflict of interest laws, and to the allocation of City funds. *See* Cal.Gov.Code § 87100. This speech is therefore entitled to constitutional protection.

**i. Speech in Response to Sexual Harassment Allegations Made Against Defendant Duran.**

■ In or around January 1993, Plaintiff alleges that several female employees accused Duran of sexually harassing them. Plaintiff, along with the city attorney, met with Duran and told him that his conduct was inappropriate, that the allegations against him were serious, that the conduct must stop, and that Duran could not retaliate against the complainants. Plaintiff refused to name the complaining employees. Pretrial Statement at 14–15.

Thereafter, Duran allegedly drafted a memorandum entitled, "City of Bell Gardens employees (Especially Female)," and asked Plaintiff to distribute the memorandum to all City employees. Plaintiff refused to circulate the memorandum, ordered the City staff not to speak with Duran about the sexual harassment allegations, and ordered that the city council and City staff be provided with sexual harassment training. Plaintiff's Ex. 78.

■ Plaintiff's alleged speech addressed matters of public concern because it related to possible violations of anti-discrimination laws by a City official. *See* 42 U.S.C. §§ 2000e, *et seq.;* Cal.Gov.Code §§ 12940, *et seq.* This speech is therefore entitled to constitutional protection.

### j. Speech Regarding Defendant Duran and Garcia's Demands that Plaintiff Discriminate In Various Employment Decisions.

From the time he was hired, Plaintiff claims that Duran and Garcia repeatedly demanded that Plaintiff make employment decisions based upon the race of the applicant. At a council retreat on October 16, and 17, 1992, Duran showed Plaintiff a "Hit List" of employees whom Duran and Garcia wanted terminated either because they were not Hispanic or because they had refused to comply with defendants' illegal demands. Thereafter, Duran and Garcia allegedly demanded on several occasions that Plaintiff terminate the individuals on the "Hit List" and hire certain individuals to replace them. Pretrial Statement at 15–22.

Plaintiff allegedly responded by informing the city council that council members had asked him to engage in illegal hiring practices. In a memorandum dated November 9, 1992, Plaintiff explained to Duran that his demands were unlawful and stated that Plaintiff would not comply with Duran's illegal requests regarding hiring. Plaintiff's Ex. 57. Plaintiff refused to comply with Duran and Garcia's demands regarding hiring. Plaintiff's Exs. 11, 21, 44, 45, 56, 57, 61. Plaintiff further claims that he informed Duran and Garcia that he was required by law to follow an open and competitive recruitment process, and that the individuals they wanted hired were not qualified for positions with the City. Plaintiff's Ex. 56.

Plaintiff's alleged speech addressed matters of public concern because it related to discriminatory and otherwise illegal practices by City officials. This speech is therefore entitled to constitutional protection.

### k. Speech Relating to Defendant Duran's Requests for Confidential Information.

Plaintiff claims that in or about December 1992 and January 1993, Duran repeatedly demanded that Plaintiff and others provide him with police-arrest information on a weekly basis, and specifically sought information relating to the arrest of a political opponent. Duran also requested information relating to applications for the position of police captain, personnel files of current City employees, and confidential information concerning a kidnapping case. Pretrial Statement at 22–24.

Plaintiff obtained the City Attorney's opinions as to the propriety of these requests, and informed Duran that he would not release the information because it was confidential. See Plaintiff's Evidence at 107.

Plaintiff's alleged speech addressed matters of public concern because it related to violations of City residents' privacy rights by City officials. See Art. 1, § 1 of the California Constitution. This speech is therefore entitled to constitutional protection.

### l. Speech Concerning Individual Council Members' Illegal Interference with the Administration of the City.

Finally, Plaintiff contends that from the time that Plaintiff became city manager, the individual defendants violated the City's municipal code by circumventing Plaintiff and giving direct orders to City staff, and by acting without the approval of the full city council. Pretrial Statement at 24–25.

In a series of memoranda, Plaintiff informed the city council, inter alia, that the municipal code prohibited individual council members from being "directly involved" with administrative matters and from harassing and intimidating City employees. Plaintiffs' Exs. 10, 11, 44, 46, 47, and 49.

Plaintiff's speech addressed matters of public concern because it related to abuses of power and mismanagement by City officials. This speech is therefore entitled to constitutional protection.

### m. Conclusion re Constitutionally Protected Speech.

In sum, this is not a case where the city manager simply disagreed and refused to comply with the policies of the city council for which the city council could justifiably terminate him. Instead, the speech at issue involved numerous allegations of wrongdoing against three individual councilmembers who

then combined to form a 3 to 2 majority which terminated him. The Court thus concludes that the speech identified by Plaintiff in his supplemental pretrial statement, with the exception of speech relating to Hernandez' illegal use of her city council badge, substantially involved matters of public concern, and is therefore entitled to constitutional protection.

### 3. Defendants Have Failed To Establish That the City's Interest in Promoting Efficiency Outweighs Plaintiff's First Amendment Rights.

█ Even though Plaintiff spoke on matters of public concern, the defendants may be entitled to summary judgment if they "show that [the] speech so severely damaged office harmony and the working relationships that the government's interest in promoting an effective workplace outweighs [Plaintiff's] First Amendment rights." *Johnson*, 48 F.3d at 426, *quoting Hyland*, 972 F.2d at 1139. The employer bears the burden of proving that the balance of interests weighs in its favor. *Johnson*, 48 F.3d at 426. "The more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." *Hyland*, 972 F.2d at 1139.

### a. Defendants' Claim that Plaintiff's Speech Is Entitled To "Slight" Protection Because of his Policy–Making Position Is Without Merit.

█ Defendants argue at length that because of Plaintiff's position as a "high ranking confidential policy maker," his First Amendment protection is slight. Memorandum at 25–32; *citing inter alia Wheaton v. Webb–Petett*, 931 F.2d 613 (9th Cir.1991); *Fender v. City of Oregon City*, 811 F.Supp. 554 (D.Or.1993), *aff'd*, 37 F.3d 1505 (1994). Defendants' arguments do not withstand scrutiny.

First, it is by no means clear the Plaintiff was a "high ranking" policy-maker. Under the municipal code, Plaintiff acted "under the direction and control of the city council." Municipal Code § 2.08.080. His duties were more administrative than policy related. *Id.*

█ Second, the fact that Plaintiff's statements were made in his capacity as city manager does not render his speech unprotected. Numerous cases have found speech made in connection with the discharge of duties to be protected under the First Amendment. *See Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir.1988) (private statements to superiors disclosing waste, mismanagement, incompetence, and unethical conduct at hospital); *O'Connor v. Steeves*, 994 F.2d 905 (1st Cir.), *cert. denied*, 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993); *see also Erickson v. Board of County Commissioners*, 801 F.Supp. 414, 422 (D.Col. 1992).

Finally, the cases relied upon by defendants for the proposition that Plaintiff's position as city manager somehow rendered his speech less protected are inapposite. In *Fender*, for example, the court concluded that the city manager's statements to a newspaper reporter advocating certain budget cuts were not protected by the First Amendment because the employee's interest in making the statements was outweighed by his employer's interest in promoting the program at issue. However, in its ruling, the court stated:

> There are a few circumstances where statements made in the course of employment have been found sufficiently meritorious that the scales tip in favor of protection under the First Amendment. Typically that occurs when the employer engaged in "whistle-blowing." ... *Fender does not seriously contend he was acting as a whistle-blower.* Rather, he was simply advocating his proposed budget cuts."

*Fender*, 811 F.Supp. at 561 (emphasis added), *citing Givhan*, 439 U.S. 410 (1979) (employee made private communications to employer concerning its allegedly racially discriminatory policies); *Roth*, 856 F.2d 1401, 1405 (9th Cir.1988) (private statements to superiors disclosing waste, mismanagement, incompetence, and unethical conduct at hospital); *Hyland*, 972 F.2d at 1137 (memo sent to judges exposing abuses, inefficiency, threats, threats to public safety, incompetence, and potential civil

rights violations at juvenile hall). Similarly, the *Wheaton* case cited by defendants did not involve "whistle-blowing." *Wheaton*, 931 F.2d at 615 (plaintiff's remarks were unsupportive of his superiors and a new program he was charged with implementing).

In the instant case, by contrast, each of Plaintiff's statements implicated abuses of power, unethical and illegal acts, and/or potential civil rights violations by City officials. The courts uniformly have held that statements such as those made by Plaintiff "directly implicate[ ] a topic of inherent concern to the community, official misconduct by an incumbent elected official." *O'Connor v. Steeves*, 994 F.2d 905 (1st Cir.), *cert. denied*, 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993); *see also Voigt*, 70 F.3d at 1562 (allegations of criminal wrongdoing and abuse of power "involve matters of inherent public concern"). Thus, the speech identified by Plaintiff and set forth above is entitled to the full protection of the First Amendment.

**b. Defendants' Claim that Plaintiffs' Speech Disrupted the Workings of City Government Is Without Merit.**

 Defendants do not directly challenge the accuracy of Plaintiff's speech, but instead complain that such speech disrupted the workings of the City government. Opposition at 36. However, the Ninth Circuit has stated that the City must do more than show mere disruption. Instead it must show actual injury to its legitimate interests. *Johnson*, 48 F.3d at 427. The Ninth Circuit has recognized:

> [t]he First Amendment balancing test [of *Pickering* ] can hardly be controlled by a finding that disruption did occur. An employee who accurately exposes rampant corruption in her office no doubt may disrupt and demoralize much of the office. But it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office.

*Id. quoting O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3d Cir.1989).

 In this case, defendants do not have a legitimate interest in covering up mismanagement or corruption and cannot justify retaliation against whistleblowers as a legitimate means of avoiding the disruption that necessarily accompanies such exposure. *See Johnson*, 48 F.3d at 427. Nor are the City's legitimate interests injured if the individual defendants were undermined by truthful statements exposing their own wrongdoing. *Id.* If the Court were to hold otherwise, "[s]ome of the most important public employee speech—exposing government corruption, wrongdoing, or incompetence—would be left outside the First Amendment's aegis." *Id. quoting Hyland*, 972 F.2d at 1138; *see also Voigt*, 70 F.3d at 1562 (where allegations involve criminal wrongdoing, burden on employer in demonstrating that its interests outweigh the First Amendment interest of employee is "correspondingly onerous").

Thus, defendants are not entitled to summary judgment on the grounds that their legitimate administrative interests outweigh the First Amendment interest in Plaintiff's freedom of speech.

**4. Genuine Issues of Fact Exist as to Whether Plaintiff's Constitutionally Protected Expression Was a "Substantial" or "Motivating" Factor in Defendants' Adverse Decision.**

 Defendants contend that Plaintiff has failed to establish that any of the allegedly protected expression contributed to their decision to terminate him as city manager. Defendants ignore the substantial evidence presented by Plaintiff which indicates that his protected speech was a motivating factor in the decision to terminate.

Plaintiff's evidence may be summarized as follows:

(1) When Plaintiff refused to hire Lazoya for the City Hall renovation project, Garcia was angry and demanded Plaintiff's resignation (Plaintiff's Evidence at 210–213, 168–71, 139–40);

(2) When Plaintiff refused to help Duran's son obtain the plastering contract, Duran was angry and subsequently blamed Plaintiff for the fact that his son did not get the job

(Plaintiff's Evidence at 75–76, 104, 141–42, 223–28);

(3) During several discussions between Plaintiff and Duran regarding the purchase of fence materials, Duran yelled and shouted at Plaintiff and, on several occasions, left the room (Plaintiff's Evidence at 144, 232–233);

(4) With respect to the towing contract, Garcia had "strong feelings" about the need to terminate contracts with "white owned" companies in favor of local Hispanic companies owned and operated by Garcia's friends (Plaintiff's Evidence at 75, 144–45, 160–61);

(5) With respect to the Bicycle Club donations, Garcia was so upset that he hired a new employee to figure out a way to fire Plaintiff (Plaintiff's Evidence at 76, 147–48, 196–98);

(6) When Plaintiff demanded an investigation into the proposed healthcare clinic, Garcia and Duran badgered and intimidated Plaintiff with threats of termination (Plaintiff's Evidence at 105–06);

(7) With respect to the grant to the Rio Hondo Boys & Girls Club, Hernandez was angry when informed of the potential conflict of interest (Plaintiff's Evidence at 149, 230–31);

(8) When Plaintiff confronted Duran about sexual harassment allegations, Duran reacted angrily and told a staff member that Plaintiff would not be around much longer (Plaintiffs' Evidence at 221A–221C, 173–76);

(9) When Plaintiff refused to engage in racially discriminatory hiring practices, defendants responded angrily and stated that their goals were being thwarted (Plaintiff's Evidence at 76, 150–57, 160–61, 163, 164–67, 180–188, 190, 194, 200–209, 215, 216, 234);

(10) When Plaintiff refused to provide confidential information to Duran, Duran was very upset with Plaintiff (Plaintiff's Evidence at 29, 158, 191–92);

(11) When Plaintiff instructed defendants not to interfere with City administration, the individual defendants were upset and their goals were thwarted (Plaintiff's Evidence at 31–32, 71, 75).

**6.** Where the employer's explicit justifications for dismissal arguably implicate constitutionally pro-

■ This evidence directly undermines defendants' vague and unsupported claim that Plaintiff was terminated not because of his speech, but because the city council "had lost confidence" in his abilities. Moreover, defendants' own evidence in support of the instant motion indicates that, as a result of Plaintiff's "opinions and recommendations," the city council lost confidence in his "loyalty and capabilities." Duran Decl. ¶ 7.[6] Coincidentally, the three members of the city council about which Plaintiff complained were the very three constituting the majority that voted to terminate his contract. Memorandum, Ex. 14.

The evidence advanced by Plaintiff could lead a jury to conclude that Plaintiff's protected First Amendment activity was a motivating factor in his termination. Courts traditionally have held that "summary judgment is inappropriate when 'questions of motive predominate in the inquiry about how big a role the protected behavior played in' the employment decision." *Peacock,* 694 F.2d at 646. Moreover, "[w]ithout a searching inquiry into these motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of post hoc rationalizations." *Id.*

## IV. CONCLUSION

Plaintiff has identified numerous statements which substantially involved matters of public concern, including statements relating to alleged criminal wrongdoing and abuses of power by the individual defendants. In fact, all the speech identified in Plaintiff's pretrial statement, with the exception of the speech relating to Hernandez' illegal use of her city council badge, constitutes protected speech. Such speech involves matters of inherent public concern and is entitled to special First Amendment protection. Defendants have failed to demonstrate that their legitimate interests in promoting efficiency outweigh Plaintiff's First Amendment interests. Furthermore, genuine issues of material fact exist as to whether Plaintiff's constitutionally protected

tected rights, summary judgment is particularly inappropriate. *Peacock,* 694 F.2d at 647.

expression was a substantial or motivating factor in defendants' decision to terminate Plaintiff from his position as city manager. Accordingly, the Court hereby **DENIES** Plaintiff's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**