**Gregory DILLON, Plaintiff–Appellant,**

v.

**Thomas RIDGE, Secretary of Homeland Security Department, Defendant–Appellee.**

No. 06–17297.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 2008.

Filed Aug. 27, 2008.

Selna, Circuit Judge, sitting by designation, filed opinion concurring in part and dissenting in part.

Willie M. Jordan–Curtis, The University of Arizona James E. Rogers College of Law, Tucson, AZ, for Plaintiff–Appellant.

Gregory Dillon, San Francisco, CA, pro se.

Steven J. Saltiel, Office of the U.S. Attorney, San Francisco, CA, for Defendant–Appellee.

Before: O'SCANNLAIN and HAWKINS, Circuit Judges, and SELNA,* District Judge.

### MEMORANDUM **

Gregory Dillon appeals the district court's orders granting the motions of Tom Ridge, the Secretary of Homeland Security, for summary judgment on Dillon's two claims of retaliation. The facts and prior proceedings are known to the parties and need not be repeated here.

■ To survive summary judgment on his claim of retaliatory termination, Dillon bears the burden of establishing that a triable issue exists concerning whether the Secretary's proffered explanation for his termination is "unworthy of credence," or that "a discriminatory reason more likely motivated [the Asylum Office]." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093–94 (9th Cir.2001) (quoting *Tex. Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The Secretary explained that he terminated Dillon because he exhibited "insubordinate" and "particularly vexing" behavior during his tenure with the Asylum Office, rather than because of his opposition to the Asylum Office's allegedly discriminatory practices. Dillon is unable to point to an employee who was retained by the Asylum Office despite exhibiting similar behavior, nor has he proffered any other evidence that his termination was pretextual. Accordingly, we are satisfied that no triable issue exists as to whether the Secretary's explanation is pretextual.

■ While Dillon also argues the Asylum Office violated Title VII when it refused to provide him with a performance appraisal, here again he bears the burden of showing that a triable issue exists as to the veracity of the Asylum Office's proffered explanation. *Id.* The Asylum Office avers that it withheld the appraisal solely because, once Dillon was no longer employed, he was not entitled to an appraisal under its internal regulations. Dillon has provided no evidence suggesting that the decision not to provide an appraisal was motivated by retaliatory animus, nor has he presented evidence of a former employee who was provided with a performance appraisal after having left the Asylum Office. Under these circumstances, we are satisfied that Dillon has presented insufficient evidence to rebut the Asylum Office's explanation.

**AFFIRMED.**

---

* The Honorable James V. Selna, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

SELNA, J., concurring in part and dissenting in part:

I concur in the court's decision to affirm summary judgment on Dillon's claim that he was denied a performance appraisal out of retaliation. However, I respectfully dissent from the court's decision to affirm summary judgment on Dillon's retaliatory termination claim, because I believe that Dillon has presented sufficient evidence to support a reasonable jury finding that the Asylum Office terminated him because he opposed its allegedly discriminatory practices.

As the court notes, the Asylum Office contends it terminated Dillon because of specified instances of insubordinate conduct. However, each of the examples of purported insubordination also represents an incident in which Dillon voiced his opposition to the policies he perceived to discriminate against Latino applicants. Thus, the actions the Asylum Office describes as insubordination are actions Dillon interprets as his ethical and conscientious pursuit of the correct and fair application of immigration law. In my view, the ambiguity inherent in the Asylum Office's proffered examples of insubordination permits an inference in Dillon's favor.

Moreover, Dillon provides additional supporting evidence of impermissible motive, including a few instances in which his disagreements with his superiors at the Asylum Office regarding legal issues impacting Latino applicants were not well received. For example, Dillon broached his concern that the "one year rule" and its exceptions had a discriminatory effect on applicants of Latin American origin with the director of the Asylum Office and "immediately felt that [he] had made a mistake in bringing the issue to her" and that she was "hostile" to it. That director testified, describing a disagreement over a particular asylum application from a Mexican petitioner, that "Mr. Dillon didn't want to follow the office policy. He ... believed that headquarters was wrong and ... didn't want to make the changes that we did, that[,] by policy[,] we've always made in our office."

All of Dillon's disagreements with his supervisors related to his concern that Latino asylum applications were not being handled properly. This common thread could be viewed by a jury as circumstantial evidence of the fact that the Asylum Office's true motive for terminating him was that he opposed the Asylum Office's discriminatory policies.

In cases where, as here, the dispute centers on the employer's real reasons for taking a particular adverse action, those motives present an "elusive factual question." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 733 (9th Cir.1986). For this reason, "the decision as to any employer's true motivation plainly is one reserved to the trier of fact." *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir.1985) (quoting *Peacock v. DuVal*, 694 F.2d 644, 646 (9th Cir.1982)). Moreover, "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1124 (9th Cir.2004) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1409 (9th Cir.1996)). I believe that Dillon has provided sufficient evidence create a genuine issue of fact as to whether the Asylum Office's proffered reason for terminating him was pretextual.

Accordingly, I would reverse the district court's grant of summary judgment for the Asylum Office on Dillon's retaliatory termination claim.